This is an action to recover the possession of 287 acres of (410) land. Plaintiffs claim the land as the widow and heirs at law of Travis Seals. Defendant is the brother of Travis Seals, who has since died. The defendant thus states his contentions in his brief:
"There are two causes of action alleged in the complaint, the first being in the nature of an action of ejectment, and the second for the surrender and cancellation of a deed made by the plaintiff Elizabeth *Page 368 
Seals to Alexander Seals on 21 April, 1893, which deed conveyed, or purported to convey, the land described in the complaint. It is the contention of the defendants that William Seals bought the land in controversy from Nathan Walters in 1856, and borrowed $200 of the purchase money from his son, Travis Seals, and to secure this $200 had the deed for the land made to Travis Seals. That in the fall of 1857 Travis Seals, in whose name said deed was made, demanded the $200 of William Seals; that William Seals paid to Travis Seals said amount, and instead of Travis Seals executing a deed to William Seals for the land, he delivered to him the original deed made to himself and which he had held as security, and promised to convey this land to him thereafter by deed. That William Seals went into the possession of this land when he purchased it from Walters, and remained in possession until the time of his death in 1872, holding the land as his own. In 1866 or 1867 William Seals agreed with Alexander Seals, verbally, that he would give him the tract of land upon the condition that he would stay with him and take care of him the rest of his life. Alexander Seals complied with this request, and after his father's death in 1872, he took charge of the land as his own, and has remained in possession of the same, adversely, to the present time. Travis Seals, under whom the plaintiffs claim, has never been in possession of said land at any time. For the purpose of perfecting his paper title, the defendant, Alexander Seals, on 21 April, 1893, secured a deed for said land from the wife of Travis Seals, Travis Seals being at the time in the State Hospital at Morganton. Elizabeth Seals executed the deed and the same was duly recorded in the office of the register of deeds for Richmond County, and the defendant, (411) Alexander Seals, has remained in the possession of the land under this deed since that time. The defendant further contends that even if said deed had been procured by fraud of the defendant, as alleged in the complaint, it would still be color of title as against Elizabeth Seals from the time of its execution, and against the other plaintiffs from the time of the death of Travis Seals; and as more than seven years had elapsed since the death of Travis Seals and before the institution of this action, the possession of said land by the defendant Alexander Seals would ripen his title as against the heirs at law of Travis Seals. And for the same reason would ripen his title as against the plaintiff Elizabeth Seals."
The jury found that the deed from Elizabeth Seals to defendant was procured by false and fraudulent representations, and that plaintiffs are the owners of the land and entitled to the possession thereof, but giving no damages. Judgment was entered upon the verdict, and defendant appealed. *Page 369 
We need consider only two questions:
First. In order to show the adverse possession of his father, William Seals, under whom he claims, the defendant proposed to prove by a witness, Harris Seals, who is a brother of Travis Seals and defendant, being the son of William Seals, the transaction between Travis Seals and William Seals in regard to the payment of the $200, the surrender of the deed from Nathan Walters, and the promise of Travis Seals to convey the land by deed to William Seals. The court excluded this testimony upon the ground that it was a transaction or communication between the witness and a party deceased, within the prohibition of Revisal, sec. 1631. This ruling was erroneous. While the transaction was of the nature described by the judge, all such transactions are not excluded by that section of the Revisal. The witness must testify "in his own behalf" against the opposite party, who claims under the deceased person, that is, adversely to his own interest. The Statute so declares in substance, and it has been so held by this Court.Bunn v. Todd, 107 N.C. 266; Tredwell v. Graham, 88 N.C. (412) 208. In Bunn v. Todd, supra, it is said that the following persons are disqualified: (1) Parties to the action. (2) Persons interested in the event of the action. (3) Person through or under whom those mentioned in the first two clauses derive their title or interest. It is then added: "A witness, although belonging to one of these three classes, is incompetent only in the following cases: Where he testifies in behalf of himself, or the person succeeding to his title or interest, against the representative of a deceased person, or committee of a lunatic, or any one deriving title or interest through them, as to a personal transaction or communication between the witness and the person since deceased or lunatic." And in Tredwell v. Graham, supra, it was said that, "Notwithstanding the statute, a party may be called to testify touching a transaction of the opposite party, when it is against his own interest." InWeinstein v. Patrick, 75 N.C. 344, Justice Reade said that "It would seem that there could be no objection against allowing a witness to testify against his own interest." It is not within the spirit or letter of the statute, as his own interest is supposed to be a sufficient protection for the opposite party against false or fabricated testimony. This appears to be well settled by the cases. Harris Seals, the witness, proposed to testify against his own interest, as his brother would get the land and exclude him, if the jury should be influenced by his testimony. The evidence of this transaction was relevant to the controversy, as it *Page 370 
tended to show that William Seals, notwithstanding that the legal title to the land was in Travis Seals by virtue of Nathan Walters' deed, was claiming the land in his own right, in opposition to Travis Seals, and that defendant was claiming under him in the same way.
Second. We think the court erred in holding that the deed of Elizabeth Seals to defendant was not color of title. It can make no difference that the deed, claimed to be color, does not in fact pass the title. It is sufficient if, on its face, it professes to do so, and defendant is in possession, claiming bona fide under it adversely. Color of title is that which in appearance is title, but which in reality is not title. (413) No exclusive importance is to be attached to the ground of the invalidity of a colorable or apparent title, if the entry or claim has been made under it in good faith. A claim to property under a conveyance, however inadequate to carry the true title, and however incompetent the grantor may have been to convey, is one under color of title, which will draw to the possession of the grantee the protection of the statute of limitations. Wright v. Matteson, 18 How. (U.S.), 50 (L. Ed., 280); Beaver v. Taylor, 1 Wall. (U.S.), 637 (17 L.Ed., 601);Cameron v. U.S., 148 U.S. 301 (37 L.Ed., 461). And our cases are to the same effect. McConnell v. McConnell, 64 N.C. 342, and Burnsv. Stewart, 162 N.C. 360, where the authorities are collected.
The deed of Elizabeth Seals was valid until set aside for the fraud. It was not void on its face, but required the intervention of a court of equity to declare it so. It was merely voidable at the instance of the grantor in it. When this is the case, the statute runs against him.Havenden v. Lord Annerly, 2 Sch. and Lef., 633. If the grantor never acts, the deed remains valid, and until he acts it will protect and ripen the possession of one claiming under it adversely as color. Proter's Lessee v.Cocke, 4 Tenn. (4 Peck M. and Y.). It was said in Blantin v. Whitaker, 2 Humphrey, 313, "to be clear that a deed, though fraudulent either in law or fact, is such an assurance of title as, coupled with seven years uninterrupted adverse possession, under and by virtue thereof, will vest in the possessor an indefeasible title to the land therein described. . . . There is no saving in the statute in favor of the true owner's right against a possession under such a deed, and the courts cannot add an exception thereto."
A very interesting and instructive discussion of the question will be found in Oliver v. Pullam, 24 Fed., Rep., 127, wherein the opinion was written by Judge Dick, formerly a member of this Court. After considering our statute and the authorities at length, he concludes as follows: "The phrase `color of title' signifies some written document which appears to be a title to land, but is not a good title. The object of the *Page 371 
Legislature in enacting the statute of limitations to quiet the possession of land and settle titles was not to protect goods (414) titles, as they could be secured in an action at law, but colorable titles that were void and worthless unless accompanied by possession. Even a fraudulent deed may be color of title and become a good title if the fraudulent grantee holds actual adverse possession for seven years against the owner, who has a right of entry and a right of action to recover possession, and is under no disability mentioned in the statutes. The adverse possession of the occupant exposes him to the action of the rightful owner, and if he neglects to assert his rights in the manner provided by law, he must accept the result of his own folly and negligence."
If this were simply an action of ejectment, plaintiffs could not attack the deed collaterally for fraud. It would require a resort to the equitable power of the court, by proper allegations, to set it aside for that reason. If it is valid at law, until canceled by proper proceedings, how can it be otherwise than color of title until it is so canceled for the fraud? It is like a judgment obtained by fraud, when its invalidity does not appear on its face. It is valid until reversed or set aside, and will protect those claiming under it.
But we think that our own cases declare it do be color of title. InPickett v. Pickett, 14 N.C. 6, the Court held that a fraudulent deed was not color of title against a creditor until the land was sold under his execution, and from that time it was color as against the purchaser. The reason why it was not color against the creditor is because, until there was a sale, he had no right to the possession of the land, and the statute, therefore, could not run against him. Referring to the adverse possession of one who claimed under a fraudulent deed, as color of title, the Court, by Judge Ruffin, said: "Against the creditor, it is true that no length of time will be a bar, because he has no specific right in the thing, and because it would be an obstruction to the statutes against fraudulent conveyances. It is likewise true that the purchaser has not a legal title until he gets a deed. But he has an inchoate right by his purchase, which is the principal ingredient of his title; and he has a perfect right to call for a conveyance, which the sheriff hath power to make, which will complete the title. No reason of policy (415) or justice authorizes a delay in perfecting his title to the specific thing purchased. But the peace of society, the security of titles, and every other consideration which induces the enactment of statutes of repose, demand that he should complete and enforce his title within the time prescribed for other legal proprietors." It will be seen, even by a cursory reading of that case, that the Court admitted the fraudulent deed to be color of title. The whole argument was predicated upon that *Page 372 
assumption, and the only question remaining was, whether the adverse possession of the fraudulent grantee would operate against the purchaser at the execution sale, from its date or the date of the sheriff's deed, the Court adopting the former as the true one under the doctrine of relation. There was no use in arguing this question, if the deed itself was not color. It will be observed that the Court says it is color from the date of the sheriff's sale, and this is enough for our purpose. The knowledge of the possessor that his deed, claimed to be color, does not pass the title, is not material. It was argued in Reddick v. Leggat, 7 N.C. 539, that a person who knew he had no title would be a "mala fide" possessor, but Henderson, J., said that would make no difference, as there is no such exception in the statute. "Whether he knew or not of any other title, the Legislature, which passed the act of 1715, did not consider material," and as to the bad faith of the possessor, it was further said, that was a matter to be litigated and determined by proof, which was not contemplated by the lawmakers, and there is nothing to show that the bad faith of the transaction could be inquired into or should affect the character of the deed as color. Judge Henderson, in this connection, says: "For us, as mere expounders of the law, it is sufficient to say that there is no such exception in the words of the act; nor is there in the act anything which authorizes us to say that the Legislature meant otherwise than as they have plainly expressed themselves on the subject now under consideration. Believing, therefore, that the jury were misdirected on this point, the rule for a new trial must be made absolute." The judge below had (416) charged that if the defendant Leggat acted mala fide, his deed was not color. Where there has been fraud merely in the treaty, the deed is valid until set aside, at least against all persons not creditors of the grantor. See, also, Taylor v. Dawson, 56 N.C. 86, andEllington v. Ellington, 103 N.C. 54 where Chief Justice Smith says: "While we deem the law settled in this State, whatever may have been the rulings elsewhere, by the case of Riggan v. Green, 80 N.C. 236, that the deed of one non compos is voidable and not void, it can make no difference when such is offered as evidence of color of title only, whether it be the one or the other, to sustain a possession under it." If a deed is color of title, though the grantee may know that another than his grantor has the true title (Burns v. Stewart, 162 N.C. at p. 366), why is not a fraudulent deed, which passes the title, unless action is taken by the grantor to set it aside? Color of title presupposes that the deed does not pass a good and indefeasible title, and there is no reason why this principle should not apply to a fraudulent deed, which may or may not pass the title, being voidable only at the election of the grantor, or the person defrauded. *Page 373 
We are of opinion that the deed is color of title, and so hold. There was error.
New Trial.
Cited: Alsworth v. Cedar Works, 172 N.C. 22, 23 (2g); Sorrell v.McGhee, 178 N.C. 281 (1f); Price v. Edwards, 178 N.C. 495 (1f); Butler v.Bell, 181 N.C. 89 (2g); Berry v. Cedar Works, 184 N.C. 190 (2f); Crockerv. Vann, 192 N.C. 429 (2g); Glass v. Shoe Co., 212 N.C. 73 (2g).