J. E. CRAYTON v. CITY OF CHARLOTTE.

(Filed 22 December, 1917.)

1. **Statutes—In Pari Materia—Municipal Corporations—Bonds.**
    Chapter 131 Laws of 1915, limiting a municipal bond issue to 10 per cent of the assessed value of its real and personal property, should be construed with the provisions of ch. 138, Laws of 1917, and the two acts being upon the same subject-matter and *in pari materia.*

2. **Same—Property Values—Limitation—Issuance.**
    Chapter 131, Laws of 1915, limits the issuance of municipal bonds to 10 per cent of its assessed real and personal property valuation, and ch. 138, Laws of 1917 to 10 per cent of the net valuation of the property, etc., the later act expressly not requiring the passage of an ordinance, under the circumstances, for the submission of the question to the voters; and where a municipality has passed the ordinance required by the act of 1915, for an election to be held on the proposition, which is held and the bonds approved after the enactment of the later act, and it appears that

2—175

the property valuation was sufficient thereunder, the further proceedings being under the act of 1917, are valid, and the bonds are a valid municipal indebtedness.

APPEAL by plaintiff from *Webb, J.*, at November Term, 1917, of MECKLENBURG.

This is a controversy without action, under section 803 of the Revisal to restrain the issue of $250,000 in bonds by the city of Charlotte for purchasing sites and building the necessary buildings for the public schools of the city.

The ordinance of the city of Charlotte calling the election on the bonds in question was passed on 23 February, 1917. The election was called and held on 26 April, 1917. This election was called by the ordinance of 23 February, under chapter 131, Public Laws of 1915. Section 6 of this chapter limits the right to issue bonds thereunder to 10 per cent of the assessed value of the real and personal property in the city. At the time the ordinance was adopted the entire bonded indebtedness of the city of Charlotte, including assessment and waterworks bonds, was $2,523,100, and the assessed value of the property for taxation at said time was $24,500,000.

On 5 March, 1917, the General Assembly passed the Municipal Finance Act, which became effective and the law of the State on 8 March, 1917. This law was effective at the date of the election above mentioned on 26 April, 1917. The said Municipal Finance Act provides for the issue of bonds, upon the favorable vote of the people, up to 10 per cent of the *net indebtedness* of the city upon the assessed value of the property therein for the three previous years. The *net indebtedness* of the city of Charlotte at the time of the subsequent resolutions of the governing body of the city of Charlotte directing and providing for the issue of the bonds was $1,903,000, and the average assessed value therein for three years was $24,475,519. The difference between the limitation as prescribed in chapter 131, Laws of 1915, and chapter 138, Laws of 1917 (being the Municipal Finance Act), is that the Municipal Finance Act, in computing the indebtedness of the city, provides for a deduction of outstanding bonds secured by collateral as street improvement bonds, and revenue producing bonds—as waterworks bonds, and striking the balance of what is called the *net indebtedness* of the city. The net indebtedness of the city, the resolutions of the governing body of the city at the time of the proposed issue of bonds was, and is, less than ten per cent of its assessed taxable property for the period mentioned in the act for 1917, under the rule of computation prescribed in said act.

Upon these facts his Honor held that the defendant had the right to issue said bonds, and that the plaintiff was not entitled to the relief prayed for and the plaintiff appealed.

*Thaddeus A. Adams for plaintiff.*
*Pharr & Bell for defendant.*

ALLEN, J. There are many subdivisions of the argument of the plaintiff attacking the proposed bond issue, but they all depend on the proposition that the election purporting to authorize the issue of bonds was called and held under chapter 131, Laws 1915, which provides that "No bonds shall be issued which together with all other bonded debt of the municipality shall exceed 10 per centum of the assessed valuation of the real and personal property situated in said municipality," and as the resolution was adopted calling the election, and the election held when the bonded indebtedness exceeded 10 per cent of the assessed valuation, there is no authority to issue the bonds.

The question has been presented earnestly and forcibly in the briefs filed in behalf of the plaintiff and defendant, but the diligence of counsel and the researches of the Court have not discovered any authority directly in point, and we must turn to the language of the statutes and the evil intended to be remedied to find the Legislative intent and the effect of the limitation on the power to issue bonds.

The act of 1915 confers the authority to issue bonds on the governing body of the city or town, but requires the approval of the qualified voters before issuing. The language is the "board of commissioners, council, or other governing body is hereby authorized to issue bonds of such municipality in all respects as provided in the foregoing section, but before issuing said bonds the question of their issuance shall be submitted to the qualified voters of such municipality."

The limitation in the act is on the power to issue bonds, and not on the right of the voters to approve, and as the power to issue is conferred upon the governing body, it is a limitation on the power of that body and not on the right to hold an election.

The distinction between the limitation on the right to issue bonds and the holding of an election to ascertain the will of the voters does not rest on mere conjecture or on a technical and strained construction of the act, but, on the contrary, is clearly recognized by the General Assembly in the act of 1915 and in the act of 1917, ch. 138, superseding it, which, being related and dealing with the same subject-matter, should be construed together, because in the act of 1915 the limitation is on the right to issue bonds—"No bonds shall be issued"—while in the act of 1917, after requiring that all bonds shall be authorized by an ordinance, it is provided in section 19, subsec. 2, that "The ordinance shall not be passed unless it appears from said statement either that the net debt does not exceed 10 per centum of said average assessed valuation or that the net increase does not exceed *three* per centum of the assessed valuation."

Why this change in language, placing a prohibition on the first step

to be taken in the issuance of bonds, unless it was in the mind of the General Assembly that the limitation in the act of 1915 related to the time of issuing the bonds?

This is also in accord with the principle generally prevailing that "The time of the actual issue of municipal bonds is the time for determining whether the debt limit is exceeded" (28 Cyc., 1584); and it has been held in the application of the principle that "An ordinance is not void which provides for a contract when financial condition will permit" (28 Cyc., 1540, and note), which is the legal effect of the resolution of 23 February.

If it be objected that this construction attributes to the General Assembly the purpose of permitting an election to be held when no bonds can be issued, the answer is that authority must precede the issuing of the bonds, and time is required after authorization before issue, and frequently the retirement of a part of the municipal indebtedness or an increase in valuations may be foreseen, sometimes much in advance of the event. And no injury can befall the taxpayer, as he becomes interested only when the bond is issued or the taxes collected for the payment of principal and interest.

We are, therefore, of opinion that under the act of 1915 the relation between the indebtedness and the valuation of the property is to be ascertained as of the time of issuing the bonds. This does not, however, establish the right of the defendant to issue the bonds in controversy, because under the act of 1915 the indebtedness, computed as required by that act, without allowing certain deductions in the act of 1917, exceeds 10 per cent of the valuation.

How is the question affected by the act of 1917?

The act of 1917, ratified 7 March, known as the Municipal Finance Act, provides in section 38 that "All acts and parts of acts, general or special (including acts passed at this session of the General Assembly prior to the passage of this act), to the extent that they relate to the subject-matter of this act, are superseded by this act: *Provided, however*, (*a*) That acts and proceedings heretofore done or taken by any municipality or the voters thereof, or any board or officers thereof, pursuant to acts or parts of acts superseded by this act shall not be affected by this act, but all such acts or proceedings similar to any acts or proceedings provided for in this act shall have the same force and effect as if done and taken pursuant to this act, and only subsequent proceedings shall be taken as provided in this act: *Provided, further*, (*b*) That in all cases where, pursuant to acts or parts of acts so superseded, an ordinance or resolution has been heretofore passed authorizing the issuance of bonds or notes or calling an election for such purpose, nothing in this act shall prevent the issuance of the bonds or notes in accordance with

the terms of such ordinance or resolution, and it shall not be necessary to pass the ordinance provided for in section 17 of this act, and no vote of the people shall be necessary for the issuance of such bonds or notes unless they are for purposes other than the payment of necessary expenses, or unless such vote shall be required by the terms of the acts or parts of acts so superseded or by the terms of the ordinance or resolution so passed."

It supersedes the act of 1915 but validates proceedings already taken under the act and provides that bonds may be issued pursuant to ordinances and resolutions calling for elections passed prior to the ratification of the act; and that subsequent proceedings shall be as prescribed in the act of 1917. If so, the resolution of 23 February calling for the election on the question of issuing bonds is valid under the act of 1917, and as the ordinance required by the latter act is dispensed with by section 38, subsection (b), the election of 26 April was regularly called under the act of 1917; and if regularly called, it was a valid election, as no other irregularity has been pointed out.

If this conclusion is sound, the governing body of the defendant has called an election at which the voters have given their approval to the proposition to issue bonds, and as the subsequent proceedings are to be taken under the act of 1917, the ascertainment of the proportion between the indebtedness and the assessed valuation of property must be under that act, and as it is conceded if this be done the indebtedness does not exceed 10 per cent of the assessed valuation, the defendant has the right to issue the bonds in question, and the same, when issued, will be binding obligations of the defendant.

Affirmed.