IN RE WILL OF MRS. EUGENIA HARRISON.

(Filed 10 May, 1922.)

**1. Wills—Holograph Wills—Devisavit Vel Non—Animus Testandi.**

Upon the issue of *devisavit vel non* it is necessary that the paper-writing offered as a holograph will show that it was the maker's intention that it should be so regarded, from the character of the instrument itself and the circumstances under which it was made, and where the *animus testandi* thus appears as doubtful or ambiguous, the question is one for the jury.

**2. Same—Verdict.**

Where, upon the trial of *devisavit vel non,* the validity of a paper-writing as a holograph will is in question, a negative finding by the jury to an issue as to whether the deceased "wrote all of said paper-writing propounded with the intent that it should operate as her last will and testament, and was it found, after her death, among her valuable papers and effects?" is in effect a finding either that the paper was not written *animo testandi,* or was not found among the valuable papers and effects of the decedent, or both, either one of which is essential to the validity of the writing as a holograph will.

**3. Evidence — Deceased Persons — Statutes— Wills—Holograph Wills— Devisavit Vel Non.**

A witness interested in the result of a trial of *devisavit vel non* as to whether the holograph will of the deceased was found among her valuable papers and effects after her death, with evidence that it had been securely wrapped in and fastened to some clothes supposed to have been put aside by her for her shroud, addressed in a sealed envelope to three of the beneficiaries, her daughters, locked in her top bureau drawer where she was in the habit of keeping her purse and other effects, may testify to the fact as being within her own knowledge, that the deceased was not in the habit of keeping this drawer locked all of the time, testimony of this character not being prohibited under our statute as to transactions or communications with a deceased person. C. S., 1795.

HOKE, J., dissenting.

APPEAL by propounders from *Bond, J.,* at September Term, 1921, of WAKE.

Issue of *devisavit vel non* raised by a caveat to the will of Louisa Eugenia Harrison. Alleged want of execution, mental incapacity, and undue influence are the grounds upon which the caveat is based.

The jury returned the following verdict:

"1. Did Louisa Eugenia Harrison write all of paper-writing propounded with intent that it should be operative as her last will and testament, and it was found, after her death, among her valuable papers or effects? Answer: 'No.'

"2. If said Louisa Eugenia Harrison wrote said paper-writing propounded, did she at that time have sufficient mental capacity to make and execute a valid last will and testament? Answer: 'No.'

"3. Was the execution of said paper-writing, if written by said Louisa Eugenia Harrison, procured by undue influence exerted over her, as alleged by caveators? Answer: 'Yes.'

"4. Is said paper-writing the valid last will and testament of said Louisa Harrison? Answer: 'No.'"

The court answered the fourth issue as a legal inference from answers 1, 2, and 3.

From the judgment rendered, propounders appealed.

*R. N. Simms, H. E. Norris, W. B. Snow, and J. M. Templeton, Jr., for propounders.*

*Pou, Bailey & Pou and Willis Smith for caveators.*

STACY, J. The paper-writing propounded, and which is called in question by the caveat filed herein, is alleged to have been found, shortly after the death of Mrs. Harrison, securely wrapped in some clothes supposed to have been put aside by the deceased to be used as her shroud. The burial clothes, containing the alleged will, were found in the top

bureau drawer in Mrs. Harrison's room. This drawer was locked at the time, and it also contained her purse, or, at least, she was in the habit of keeping her purse and other effects in this drawer. The alleged will was sealed in an envelope and addressed to Alice, Maude, and Clyde, daughters of the deceased. The following is a verbatim copy of the paper-writing propounded:

December 21, 1914.

Alice, Maud and Clyde, my dear children, when I am dead want you to have 50 achers of my land run off and give Grove deed to it if he is living then divided equal between you three children if either of you die without having any children at that wons death I want that wons part to go to Maud children, now my dear children please do just like ive ask you to do when I am dead and gone, dont want eny of you to ware black for me, think it looks better not preten to start it then only part black now do as I say about it dont forget to burn all my old things I want you all to do just like ive told you, dont want eney won to read this while I am living.                                    GENIA HARRISON.

The record contains over a hundred exceptions, and it would be a work of supererogation to consider them in detail or *seriatim*. Indeed, we deem it unnecessary to go beyond the first issue; for, if this be answered correctly and without error, the remaining issues and exceptions relating thereto become immaterial.

The jury have found as a fact that the letter or script, if genuine and in the handwriting of the deceased, was not written *animo testandi,* by which is meant that it was not her purpose or intention that said paper-writing should operate as a testamentary disposition of her property (*In re Johnson,* 181 N. C., 305); or else the jury has determined that the same was not found among the valuable papers and effects of the decedent. C. S., 4144. This is the necessary meaning of the answer to the first issue; and, under the jury's finding, the letter or instrument propounded may not be admitted to probate as a valid holograph will. *Spencer v. Spencer,* 163 N. C., 83.

The *animus testandi* of Mrs. Harrison being doubtful, or, at least, ambiguous, as appears from the face of the instrument, we think his Honor was justified in submitting the question to the jury for determination. "It is essential that it should appear from the character of the instrument and the circumstances under which it was made that the testator intended it should operate as his will, or as a codicil to it." *In re Bennett,* 180 N. C., 5.

Propounders object because Mrs. Rasberry, one of the caveators, was permitted to testify that the bureau drawer in which it is alleged the script was found was not usually kept locked; that Mrs. Harrison was

not in the habit of keeping it locked; that there was a key to the drawer, and that sometimes it was locked and at other times it was not. It is urged that this testimony should have been excluded, under C. S., 1795, as violative of the rule against offering evidence of personal transactions or communications between the interested witness and the deceased person; but we do not think the evidence in question falls within the inhibition of the statute. It was competent for the witness to say whether or not the drawer was locked, and to testify as to the habit or custom of keeping it locked. This was a matter within her own knowledge, and did not perforce entail a recitation of any personal transaction or communication with the alleged testator. *Carroll v. Smith,* 163 N. C., 204; *McCall v. Wilson,* 101 N. C., 598. The extent of her observation and the opportunity she may have had to know about the matter, independent of any transaction or communication with the deceased, were inquired into on the cross-examination; and this was proper as affecting her credibility and the weight of her testimony, but not necessarily its competency. *In re Bradford's Will, ante,* 4.

In *Lane v. Rogers,* 113 N. C., 171, it was held that the witness might say she saw the book in the hands of the deceased, at the time and place in question, but not that the deceased handed her the book. See, also, *McEwan v. Brown,* 176 N. C., 249, and *Sawyer v. Grandy,* 113 N. C., 42.

After a careful examination of the record, we have found no reversible error with respect to the trial of the first issue, and it is, therefore, unnecessary for us to consider the remaining exceptions.

No error.

HOKE, J., dissenting.