BEATRICE BOYD v. C. F. WILLIAMS, ADMINISTRATOR OF THE ESTATE OF W. V. BOYD.

(Filed 19 September, 1934.)

1. **Evidence D b—**

　　C. S., 1795, rendering incompetent testimony by an interested party as to transactions or communications with a decedent, applies to actions in tort as well as actions on contract.

2. **Same—Testimony of transaction with decedent which is material to establishment of liability of estate to witness is incompetent.**

　　A husband driving a car owned and controlled by him had an accident resulting in his death and serious injury to his wife, who was riding with him. The wife sued his estate to recover for her injuries and the only evidence of negligence was her testimony that he was traveling at an excessive speed upon a curve, and that the accident occurred when the car failed to make the curve, and that she had spoken to him in regard to

the speed he was driving the car: *Held,* the driving of the car was a transaction within the meaning of the term as used in C. S., 1795, and her testimony of his manner of driving and her statement to him regarding the speed was incompetent under the statute, her testimony of the transaction and communication being an essential or material link in the chain establishing liability of the estate to her.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION to recover damages for personal injury, tried before *Clement, J.,* at January Term, 1934, of GUILFORD.

The plaintiff is the wife of the deceased, W. V. Boyd, and was injured on 16 March, 1934. Certain medical testimony was offered tending to show the extent of the injuries sustained by plaintiff, but the only evidence offered as to what actually occurred was contained in her testimony. She said: "About the 16th I came to High Point with Mr. Boyd. We came in Mr. Boyd's car. . . . We left High Point about five or five-thirty the same day. . . . We stopped outside of Statesville . . . long enough to get something to eat. We started from Statesville to go to Hickory. We did not get to Hickory. . . . Mr. Boyd was driving the car. I did not drive it any at all. I could not drive a car. . . . At or just before we got to the place of the wreck, there was kind of a winding road. We were coming down grade, and there was a short curve. I don't guess you could see it over one hundred and twenty-five feet . . . before you get to it. . . . We came down grade and started the curve and hit the center of the curve and couldn't make it. . . . I don't think you could hardly see a car coming until you got on the curve. . . . As to what happened in the wreck, it happened so quick I don't know. The next thing I knew was when they were picking me up to take me to the hospital. I was not conscious all the time. . . . All of my body except my head was under the car. I don't know where Mr. Boyd was. He was killed. He lived about twenty-four hours, I think."

While the plaintiff was testifying in her own behalf she was asked the following questions: (a) "At what rate of speed was he driving, would you say, just before the wreck?" (Ans.) "Between forty-five or fifty miles." (b) "What do you mean by center of the curve?" (Ans.) "Well, he hit about the center of the curve, he couldn't make the curve." (c) "When you started in the curve, what rate of speed would you say he was running?" (Ans.) "Forty-five or fifty miles an hour." (d) "Did you make a statement to Mr. Boyd about the rate of speed at which he was driving?" (Ans.) "Yes."

The defendant objected to all the foregoing evidence upon the ground that, as she was suing the estate of her deceased husband for damages, she was an interested witness and disqualified by C. S., 1795, to testify

as to transactions and communications with her husband. The evidence was admitted at the trial in the county court and a verdict rendered in favor of plaintiff in the sum of $5,481. The defendant appealed to the Superior Court, assigning as error the admission of the testimony of the wife as heretofore indicated. The judge of the Superior Court overruled the exceptions and affirmed the judgment of the county court. Whereupon the defendant appealed.

*Walser & Casey for plaintiff.*
*Dalton & Pickens for defendant.*

BROGDEN, J. A wife, living with her husband, is riding with him along the highway, in a car owned, controlled and driven by the husband. The car fails to make a curve and is apparently wrecked or turned over, killing the husband and seriously injuring the wife. She sues the estate of the deceased husband for damages and is allowed to testify as to violations of the statute regulating the operation of automobiles, and that she made a statement to her deceased husband at the time "about the rate of speed at which he was driving."

These facts produce two questions of law:

1. Does C. S., 1795, apply to actions in tort, or is the statute confined to actions on contract?

2. Does the testimony of the wife constitute a transaction or a communication with her deceased husband within the contemplation of said statute?

No case has been called to our attention in this jurisdiction deciding the question as to whether C. S., 1795, applies to tort actions. However, no sound reason occurs to the Court for limiting the application of the statute to actions on contract. Furthermore, the question has been considered in other jurisdictions and the general result of such consideration is expressed in 28 R. C. L., p. 494, as follows: "Ordinarily a statute excluding the testimony of the surviving party, where one of the original parties to a contract or cause of action is dead, applies to an action in tort as well as to an action on contract." The author of an annotation on the subject in 36 A. L. R., 959, says: "Practically all of the cases within the scope of the present annotation assume that the disqualifying provision may apply to an action *ex delicto* and is not limited to actions *ex contractu.*" See *Van Meter v. Goldfarb,* 148 N. E., 391, 41 A. L. R., 343; *Souther v. Belleau,* 262 S. W., 619, 36 A. L. R., 956.

Consequently, the first question of law is answered in the affirmative.

The second question of law is not free from difficulty. There is a host of cases construing and interpreting C. S., 1795, and as there is

apparently no case directly in point, it would doubtless be both confusing and useless to undertake to dissect the cases or capitulate the various aspects of the statute which they present. A concise statement of the general purpose of the statute is found in the following utterances in *Brown v. Adams,* 174 N. C., 490, 93 S. E., 989: "It shocks our ideas of fair play thus to place one of the parties at the mercy of the other by allowing one to speak in his own behalf when he is under the power and influence of self-interest, by silencing the other, so that he cannot reply. This is an unjust advantage, not contemplated by the statute."

Also, in *Davidson v. Bardin,* 139 N. C., 1, 51 S. E., 779, this Court said: "Under these decisions the plaintiff was competent to testify that she went to the house of defendant's intestate, and his condition, and what she saw or heard, so long as these were independent facts and did not tend to show a 'communication or personal transaction' between her and the deceased, whereby a liability to her, express or implied, would accrue." The words "whereby a liability to her, express or implied, would accrue" would seem to mean that transactions and communications essential to the cause of action are excluded by the statute. Indeed, an analysis of many cases leads to the conclusion that, where the transactions and communications become an essential or material link in the chain establishing liability against the defendant, the philosophy of the statute, as interpreted and applied in the decisions, would exclude them from the consideration of the jury.

In the case at bar the only evidence of negligence, and thus the only evidence establishing the liability of the deceased, was the speed of the car at the curve. Such operation of the car by the dead husband was certainly a transaction within the broad meaning of that term heretofore pronounced in the decisions. The wife was present in the car and undertakes to recover damages from the estate of the deceased solely by reason of such transaction. Without such evidence she could not recover upon the record in this case. Therefore, it would seem that such personal transaction is one "between the witness and the deceased person."

The statement of the wife on the witness stand that she made a statement to her husband about the speed of the car at the time of the wreck is clearly an invasion of the statute, because she had previously testified that the speed was excessive.

The Court is of the opinion that the evidence is incompetent and should have been excluded.

Error.

SCHENCK, J., took no part in the consideration or decision of this case.