H. F. HARDISON v. JAMES A. GREGORY AND GERALD M. GREGORY, CO-ADMINISTRATORS OF THE ESTATE OF BONNIE M. GREGORY.

(Filed 30 June, 1955.)

**1. Appeal and Error § 23—**

Exceptions presenting a single question of law for decision are properly grouped under one assignment of error.

**2. Appeal and Error § 29—**

Exceptions not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**3. Husband and Wife §§ 26, 33—**

Alienation of affections and criminal conversation are distinct torts; physical debauchment is generally not a necessary element of a right of action for alienation of affections.

**4. Evidence § 32—**

G. S. 8-51 applies to tort actions.

**5. Same—**

The disqualification of a party to the action to testify against the personal representative of a deceased person as to a transaction or communication with the deceased does not prohibit such interested party from testifying as to the acts and conduct of the deceased where the interested party is merely an observer and is testifying as to facts based upon independent knowledge not derived from any personal transaction or communication with the deceased.

**6. Same—**

In this action for alienation of affections and criminal conversation against the administrators of the alleged tort feasor, plaintiff's testimony

that when he returned to his home at night he found the deceased standing in the living room of the unlighted house, and that on two other occasions he saw his wife and the deceased alone at farm cabins, *is held* competent as testimony of independent facts. The Supreme Court is evenly divided in opinion, one Justice not sitting, as to the competency of plaintiff's testimony in regard to an assault by plaintiff on the deceased.

**7. Husband and Wife § 36—**

In an action for criminal conversation it is not necessary to show the adultery of the wife by direct proof, but it may be shown by circumstantial evidence from which the guilt of the parties can be reasonably inferred.

**8. Same—Circumstantial evidence held sufficient in this action for criminal conversation.**

Evidence tending to show that plaintiff returned home at night, found the alleged tort feasor standing in the living room of the unlighted house, and on two other occasions saw the parties alone in a farm cabin, with no evidence that any one lived in either of the cabins or that any person was in them at the time except plaintiff's wife and the alleged tort feasor, and on another occasion saw through the tort feasor's office window the tort feasor hugging and kissing his wife, together with admissions of the wife that on the occasion plaintiff found the tort feasor in his unlighted house she was in her bedroom fixing to dress, and that on one occasion in leaving one of the cabins with the tort feasor, she knew her husband was pursuing them in his car because of her relationship to the tort feasor, *is held* in this action for criminal conversation sufficient to be submitted to the jury on the question of whether the alleged tort feasor had immoral relations with plaintiff's wife. As to whether an action for criminal conversation survives the death of the tort feasor, *quære.*

HIGGINS, J., concurring.

JOHNSON and BOBBITT, JJ., join in concurring opinion.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Bickett, J.,* at January Civil Term 1955, of DURHAM.

Action to recover damages for criminal conversation with plaintiff's wife and alienation of her affections by Bonnie M. Gregory, deceased. The defendants are co-administrators of the estate of Bonnie M. Gregory.

The jury found in answer to the issues submitted to them that Bonnie M. Gregory wrongfully alienated the affections of plaintiff's wife, had immoral relations with her, and fixed damages in the sum of $10,000.00. Judgment was entered upon the verdict.

The defendants appealed, assigning error.

*Gantt, Gantt & Markham and James R. Patton for Plaintiff, Appellee.*

*Reade, Fuller, Newsom & Graham for Defendants, Appellants.*

PARKER, J. The defendants have grouped their Exceptions One through Fifteen, both inclusive, and have discussed these Fifteen Exceptions as one assignment of error in their brief. This was proper because all these exceptions present a single question of law for decision by the Court. *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785. The question of law is this: Does the testimony of plaintiff concerning the conduct of the deceased Bonnie M. Gregory to his wife, Mrs. Nellie Hardison, on three separate occasions and his striking Bonnie M. Gregory in the face with a hatchet, constitute a transaction or a communication with a deceased person within the contemplation of G. S. 8-15?

Over the defendants' objections and exceptions plaintiff was permitted to testify in substance as follows:

### FIRST OCCASION

In November 1949 plaintiff had been away from home on a duck hunting trip. He arrived home about 8:30 p.m. No lights were on. He walked in the house, turned on the lights, and found Bonnie M. Gregory standing in the living room close to the bedroom door. The bedroom door was locked.

### SECOND OCCASION

Plaintiff knew where Bonnie M. Gregory's farm and cabin were on the Roxboro Road. In March 1949 he drove by and saw Bonnie M. Gregory's car parked near the cabin. Later, about 12:00 o'clock noon, he came back, and saw his wife and Bonnie Gregory leaving in Gregory's Cadillac car. He tried to catch them in his Mercury car, but the Cadillac outran him, and he lost them in the northern part of the City of Durham.

### THIRD OCCASION

On the afternoon of 3 January 1952, pursuant to a telephone call, plaintiff went out on the Fayetteville Road to a cabin belonging to Rat Massey. This cabin was about 400 yards from the highway. He saw parked there Bonnie Gregory's Cadillac car. He parked his car, and walked by the cabin on a dirt road. Before he got back to his car, he saw Gregory and his wife come out of the cabin, get in the Cadillac, and drive away. He chased the Cadillac five or six miles, going 90 to 95 miles an hour. A train blocked the Fayetteville Road, and Gregory turned down a dead end dirt road. Gregory drove his car to a Negro's home, through the yard, across a field, hit a tree, and stopped. He went to the Cadillac; Gregory rolled up the glass window. The doors were locked. Plaintiff's wife was on the floor board of the front seat.

He went back to his car, got a hatchet, knocked out a glass window of the Cadillac, and struck Gregory in the face with the hatchet. His wife got up from the floor board, opened the right door, and got out. He ran around the car, and knocked the glass there out. Gregory jumped out, ran to a nearby shallow creek, and stood in it putting water on his face. Plaintiff's wife stood 10 or 12 steps from the creek while Gregory was standing in it. Before leaving, plaintiff testified he had a conversation with his wife and Gregory, but he was not asked, and did not testify, as to what was said.

The plaintiff also testified as follows over objection and exception:

### FOURTH OCCASION

When plaintiff's wife was working for Bonnie Gregory in 1948, upon one occasion plaintiff looked through a window of Gregory's office and saw Gregory hugging and kissing her.

The exceptions as to this testimony on the fourth occasion are numbered 16 and 17. These two exceptions are not brought forward, and discussed in defendants' brief. Exceptions Nos. 16 and 17 are taken as abandoned. Rule 28, Rules of Practice in the Supreme Court. 221 N.C. 562.

Alienation of affections and criminal conversation are two distinct torts. Generally a physical debauchment of plaintiff's wife is not a necessary element of a right of action for alienation of affections. 42 C.J.S., Husband and Wife, Sec. 668.

The form of action for both torts is *ex delicto*. 42 C.J.S., Husband and Wife, Sections 683 and 699. G. S. 8-51 applies to tort actions. *Boyd v. Williams*, 207 N.C. 30, 175 S.E. 832.

We have a host of cases construing and interpreting the words "a personal transaction or communication between the witness and the deceased person" used in G. S. 8-51, and much litigation has arisen over the application of the quoted words.

The Court said in *Sanderson v. Paul*, 235 N.C. 56, 69 S.E. 2d 156, speaking in reference to G.S. 8-51: "Courts are not disposed to extend the disqualification of a witness under the statute to those not included in its express terms."

We said in *Whitesides v. Green*, 64 N.C. 307: "But there is no prohibition against the defendant testifying as to any matter other than a transaction or communication with the deceased." These words are quoted in *In re the Will of Bowling*, 150 N.C. 507, 64 S.E. 368.

Apparently we have no case directly on all fours, but we have a number of cases that sustain the proposition that G.S. 8-51 does not prohibit an interested party from testifying as to the acts and conduct of the deceased, where the interested party is merely an observer—in

other words as to independent facts based upon independent knowledge, not derived from any personal transaction or communication with the deceased. *Gray v. Cooper,* 65 N.C. 183; *McCall v. Wilson,* 101 N.C. 598, 8 S.E. 225; *Costen v. McDowell,* 107 N.C. 546, 12 S.E. 432; *Lane v. Rogers,* 113 N.C. 171, 18 S.E. 117; *Worth v. Wrenn,* 144 N.C. 656, 57 S.E. 388 (testimony of deceased on former trial); *In re the Will of Bowling, supra; Sutton v. Wells,* 175 N.C. 1, 94 S.E. 688; *In re the Will of Harrison,* 183 N.C. 457, 111 S.E. 867; *In re the Will of Mann,* 192 N.C. 248, 134 S.E. 649; *In re the Will of Foy,* 193 N.C. 494, 137 S.E. 427; *Wilder v. Medlin,* 215 N.C. 542, 2 S.E. 2d 549; *Collins v. Lamb,* 215 N.C. 719, 2 S.E. 2d 863; Stansbury's North Carolina Law of Evidence, pp. 128-129.

In *Gray v. Cooper, supra,* plaintiff was held competent to testify that the deceased had and enjoyed the services of slaves. This Court said: "That the intestate had the possession of the slaves during the years in question was a fact which the plaintiff might know, and which he says he did know, otherwise than from a transaction or communication with the intestate." The Court goes on to say, if this testimony was not true, it might have been contradicted by the slaves.

In *McCall v. Wilson, supra,* it is said that an interested witness may testify as to what she saw the deceased do, as that "she saw him start off with the money, and bring back the deed."

In *Lane v. Rogers, supra,* it was held that plaintiff was competent to testify that she saw the book in the hands of intestate on her wedding day, but that she was incompetent to testify that intestate handed her the book, because that was a personal transaction between her and the intestate.

The case of *In Re the Will of Bowling, supra,* holds that the testimony of an interested witness as to the relative positions of the deceased testator, the attesting witnesses and the desk and counter in a store and as to what he saw deceased testator do, was properly admitted in evidence as "manifestly independent facts," not involving transactions or communications with the deceased.

In *Sutton v. Wells, supra,* an interested party testified the deceased occupied the building after she got her deed. The Court said: "This did not relate to any transaction between the witness and M. M. Wells, but was a substantive fact of which she had knowledge independently of any statement by the deceased and the testimony was competent just as she could have proved the handwriting of the deceased, or the value of property owned by him, or any other substantive fact."

The case of *In re Harrison, supra,* states: "It was competent for the witness to say whether or not the drawer was locked, and to testify as to the habit or custom or keeping it locked. This was a matter within her

own knowledge, and did not perforce entail a recitation of any personal transaction or communication with the alleged testator."

*Boyd v. Williams, supra,* was a civil action to recover damages for personal injuries brought by a wife against the administrator of her deceased husband. The only evidence of negligence establishing liability was the speed of the car at the curve. The testimony of the wife, who was riding in the car, as to its speed, was held incompetent by virtue of G.S. 8-51 as involving a personal transaction between the witness and the deceased person, because it was an essential or material link in the chain involving liability against the defendant. See also *Davis v. Pearson,* 220 N.C. 163, 16 S.E. 2d 655, which relates to a somewhat similar state of facts. It would seem that the ruling in these two cases was based upon the fact that each plaintiff was a passenger in the car. For a discussion of the *Boyd v. Williams case* and of the decisions elsewhere as to this point, see 19 N.C.L. 231. We consider these two cases are not applicable to the present case.

Our cases hold that an interested party is not prohibited by G.S. 8-51 from testifying concerning his independent acts. *Johnson v. Rich,* 118 N.C. 268, 23 S.E. 1007 (attendance in court as a witness) ; *Jones v. Waldroup,* 217 N.C. 178, p. 186, 7 S.E. 2d 366; *Lister v. Lister,* 222 N.C. 555, 24 S.E. 2d 342; Stansbury's North Carolina Law of Evidence, p. 130.

It is to be noted that plaintiff gave no testimony as to any words spoken on the three occasions. Applying the principles of law stated above to the facts, we conclude that the plaintiff was competent to testify as to what he saw the deceased Bonnie M. Gregory do and his conduct on the three occasions set forth, because he was testifying as to independent facts based upon independent knowledge, not derived from any personal transaction or communication with the deceased. To hold that this testimony is incompetent because it concerned "a personal transaction or communication" between the plaintiff and the deceased Bonnie M. Gregory, would violate human nature and brand plaintiff as a willing cuckold.

It would seem that the testimony of plaintiff that on the third occasion he struck the deceased in the face with a hatchet was competent as testimony of an independent act of plaintiff.

The defendants discuss their Exceptions Nos. 18, 19, 20 and 21 under one head in their brief entitled, "Was there sufficient evidence adduced on behalf of the plaintiff to warrant the submission to the jury" of the second issue. Exceptions 18 and 19 are to the refusal of the court to allow their motions for judgment of nonsuit made at the close of plaintiff's evidence, and renewed at the close of all the evidence. Exception 20 is to the submission of the second issue. Exception 21 is to the

failure of the court to set aside the verdict as being against the greater weight of the evidence. The defendants in their brief state no reason or argument and cite no authority that the action should have been non-suited. Their argument and citation of authority is that there was not sufficient evidence for the submission to the jury of the second issue.

"It is not necessary to show the adultery by direct proof, but circumstances are sufficient for that purpose, if therefrom the jury can reasonably infer the guilt of the parties." *Powell v. Strickland*, 163 N.C. 393, 79 S.E. 872.

The defendants called as their witness plaintiff's wife, Mrs. Nellie Hardison, examined her in their behalf, and she denied having had any immoral relations with Bonnie M. Gregory. The following facts were elicited from her on cross-examination: That when plaintiff testified he returned home from a duck hunting trip and found his house dark and Bonnie Gregory standing in the living room beside her bedroom, she said she was in the bedroom fixing to dress. She said she did not know Gregory was in the house. That the door from the living room to the bedroom was closed but not locked: the door to the hall was locked.

In reference to the Third Occasion on 3 January 1952, Mrs. Hardison said on cross-examination that when Gregory and she left Rat Massey's cabin, she knew plaintiff was pursuing her by virtue of her relationship with Bonnie Gregory, and that she does not remember that she offered her husband any explanation as to her presence with Gregory. That when she and Gregory left Massey's cabin in his Cadillac, and were on the road to Durham, Gregory saw her husband's car behind, said "Herbert is behind us," and gave his Cadillac the gas. She stayed with Gregory after he was hit with the hatchet, and Gregory took her to her sister's. She left her husband after this episode.

The admissions of Mrs. Nellie Hardison that when plaintiff returned from his duck hunting trip at night, he found Bonnie M. Gregory in the living room of his house—plaintiff testified the house was dark—at her bedroom door and that she was in the bedroom fixing to dress, and that she knew her husband was pursuing her when she and Bonnie M. Gregory left Rat Massey's cabin by virtue of her relationship to Bonnie M. Gregory, and the evidence of plaintiff as to the four occasions set forth above, considered in the light most favorable to plaintiff, create, in our opinion, a reasonable inference that the conduct of plaintiff's wife and Bonnie M. Gregory was not only very suspicious, but had all the earmarks of a guilty intercourse, and are sufficient to justify the submission of the second issue to the jury.

We have examined the cases of *Barker v. Dowdy*, 224 N.C. 742, 32 S.E. 2d 265, and *S. v. Gordon*, 225 N.C. 757, 36 S.E. 2d 143, cited and relied upon by the defendants. In our opinion, the evidence in the

present case is stronger.  Those cases do not contain damaging admissions as made by plaintiff's wife here, when put on the stand by the defendants.  In the case here there is no evidence that any one lived in the Gregory or Massey cabins, or that any one was in either cabin when plaintiff testified his wife and Gregory were there, except those two.

*Quære:*  In North Carolina, does an action for alienation of affections or criminal conversation die with the person who caused the injury? See: 1 C.J.S., Abatement and Revival, Section 147; 1 Am. Jur., Abatement and Revival, Section 99; Annos.: 14 A.L.R. 693; 24 A.L.R. 488; 57 A.L.R. 351; N.C. G.S. 1-74; *Suskin v. Maryland Trust Co.,* 214 N.C. 347, 199 S.E. 276; N.C. G.S. 28-175.  This question is not presented for decision.

In the trial below we find

No Error.


HIGGINS, J., concurring:

The plaintiff, over objection, was permitted to testify in the manner described in the opinion as the "third occasion."  In substance, the plaintiff testified that on January 3, 1952, he saw Bonnie M. Gregory and plaintiff's wife get into the Gregory car at a cabin several miles from Durham; that he chased them until near Durham the highway was blocked by a passing freight train; whereupon Gregory turned on a dirt road and continued until he hit a tree at the dead end of the road. Plaintiff, armed with a hatchet, went to the Gregory car, the doors to which were locked.  Using the hatchet, the plaintiff broke both windows, hit Gregory in the face with the hatchet and chased him into a nearby creek.  Plaintiff departed, leaving Gregory in the creek bathing his wounds and plaintiff's wife on the bank of the stream.  Gregory was deceased at the time of the trial.  The defense was conducted by his personal representatives.

I think the defendant's objections should have been sustained and the evidence excluded under G.S. 8-51 as constituting "a personal transaction between the plaintiff and the deceased."  The plaintiff is a party to the action; he testified as a witness in his own behalf and against the personal representative of the deceased.  *Bunn v. Todd,* 107 N.C. 266, 11 S.E. 1043; *Seals v. Seals,* 165 N.C. 409, 81 S.E. 613; *Bank v. Wysong,* 177 N.C. 284, 98 S.E. 769; *Peek v. Shook,* 233 N.C. 259, 63 S.E. (2d) 542.  Under the authority of the above cases the only ground upon which the evidence could have been competent is that it did not relate to a personal transaction between the plaintiff and the deceased.  The chase from the cabin to the end of the road, the breaking out of both windows with a hatchet, and the assault made with the weapon, in my

view, constituted *a personal transaction*. The defendant's objections to the evidence were preserved by exceptions Nos. 10, 11, 12, 13 and 14.

Mrs. Hardison was called as a witness for the defendant. While she did not testify on direct examination about the occurrence on January 3, on cross-examination she did give rather full details in material substance the same as given over objection by the plaintiff. In view of her testimony, therefore, the admission of plaintiff's testimony is not deemed of sufficient importance to justify another trial. I concur in the result.

JOHNSON and BOBBITT, JJ., join in this opinion.

BARNHILL, C. J., took no part in the consideration or decision of this case.