The plaintiff alleged that the defendant corporation is indebted to it in the sum of $13,320, with interest as stated, being the balance due on the three notes, one of $1,000, another of $8,000, and the remaining one of $4,500, due ninety days after their respective dates, and given by defendant to it, for money loaned, in the months of March and April, 1918.
The defendant denied that any money had been loaned, but admitted the execution of the three notes, and alleged, as a counterclaim, that they had an agreement, under which it was to borrow of the plaintiff a large sum of money from time to time, but upon the condition, and as a part of the consideration for the loans, that the defendant should keep on deposit with the plaintiff bank a sum of money equal to 20 per cent of the total amount of the loan as made to it, which (286) should not be subject to check; or, in other words, the defendant borrowed the money and gave its three notes for the full amount of the loan, but received 20 per cent less than the amount of it or the same per cent less than the face value of the notes.
Defendant further alleged that it borrowed other money from the plaintiff bank, under a similar agreement as to the keeping of the 20 per cent of each loan on deposit with the bank, so that in all the defendant had borrowed and executed its notes for forty-five thousand dollars, and had received only thirty-six thousand dollars thereon, when the plaintiff applied the twenty per cent kept on deposit under the agreement, and amounting then to $3,700, to the indebtedness of the defendant. That during the entire course of these transactions, it further alleges, the interest on the respective loans, or the notes given therefor, was regularly paid by defendant at the rate of 6 per cent, and that "the requirement on the part of the plaintiff that the defendant should keep on deposit with the plaintiff 20 per cent of the amounts represented by the said notes was simply a scheme by which the plaintiff charged, reserved, and collected a greater rate of interest than that allowed by law." That under this scheme, which was devised for the purpose of exacting and receiving excessive and unlawful interest, under the guise of a fair and valid transaction, the defendant had paid to the plaintiff, and the latter has received, as usury, the sum of five thousand, two hundred and thirty-two dollars and fifty cents, and for this amount it demands judgment. *Page 303 
The plaintiff answered to the counterclaim and denied that it had received any excessive or unlawful interest from the defendant, or that it had agreed to do so, or to enter into any scheme or device for the purpose of reserving usurious interest in any form or manner, and specially that it required a deposit to be kept by defendant in its bank of 20 per cent of the loans or that it charged, reserved, or received interest, either directly or indirectly, on any amount which was really larger than that which was actually loaned. The defendant circumstantially denied all of the averments of the counterclaim as to the alleged usury.
There was evidence that when 20 per cent of a discounted loan is kept on deposit it amounts to 7 1/2 per cent on the original indebtedness.
O. C. Wysong was former president of the defendant company. He is now dead.
Defendant asked Guy Branson, its own witness, this question: "Did Mr. Wysong, president of this company, while you were there, ever instruct you to maintain a balance of 20 per cent of the indebtedness of the Wysong Miles Co. with the Fidelity Bank? Objection by plaintiff. Objection sustained, and defendant excepted. By the court: Any declaration by the deceased president is incompetent (287) and hearsay."
J. F. Wily, witness of plaintiff, testified that he was a stockholder and an active officer, as cashier, of the plaintiff bank at Durham, N.C. That he had a conversation with Mr. Wysong and agreed to refer the defendant's application for a loan to the directors of the plaintiff bank if defendant would send a statement of it financial condition and would give a satisfactory reference, and that after that the loan was made. The witness then testified that the balance of defendant's account with the bank varied, sometimes considerably below the 20 per cent level, and at other times above it; in July it dropped to $899, and at other times it was as low as $1,000, $1,200, $1,400, and $1,600, the defendant having the right to check on the deposit at will. This witness stated that the $3,700 was credited on defendant's note under its instructions, given by Mr. Wysong, who was its president. The latter evidence was objected to by defendant, and the objection was overruled. Defendant excepted. He then further testified that he had never heard of any usury agreement until this suit was brought, and that defendant ratified what was done by the plaintiff as to the $3,700 by giving the note for $1,300, which was the balance. The witness further testified as follows: "The account varied every day because they checked on us. There was nothing unusual about the account. The account has been practically dead since the time of the application of the $3,700, 6 May, 1914. The final statement shows a balance of thirty-three dollars and *Page 304 
two cents. I have never objected to their drawing that out and did not know it was in the bank until we worked up this statement. . . . I have made demand for payment of the notes now due for $4,500, $1,000, and $7,820; total, $13,320. Mr. Wysong did not sign these notes, and I am asserting no claim against his estate. I am simply pressing these notes. They never made any suggestion of usury. We were requested to renew these notes, but refused. (Plaintiff here offers three notes in evidence as follows: 6 April, 1918, $4,450; 6 March, 1918, $1,000; 29 March, 1918, $7,820." Cross-examined, he said: "My Wysong was endorser on the first notes, and I think on all the notes given up to the time of his death. I think he died last January. Up until the time Mr. Wysong died he was endorser on the notes." He did not endorse those now sued on.
Several letters of a correspondence between the parties were introduced by the defendants, the first letter, dated 10 January, 1912, asking for "a line of credit" and proposing to keep a 20 per cent balance of all discounted papers in the bank. This could not be answered, as Mr. Wiley, cashier of plaintiff bank, was about to leave Durham for a business trip, and he so wrote to defendant in a letter dated 10 January, 1912. In the third letter, dated 12 May, 1912, the defendant refers to its having kept such a balance in another Durham bank, where (288) it had an account, and stated that it was favorable to that bank as it averaged between 7 1/4 and 7 1/2 per cent interest on the loans. This letter was answered by the plaintiff on 24 January, 1912, in which it said: "We beg to say that the matter mentioned in your letter has been considered, and it looks like we can accommodate you. If convenient, come down some day and talk it over, and in that way we can understand each other much better than by attempting to do so by correspondence." The other letters written in 1912 refer merely to a loan of $5,000. A letter of 6 May, 1914, refers to the application of the $3,700 to the note in the bank, which would leave a balance of $33.02. The letter of 6 May, 1914, also stated that Mr. Vaughn, who represented the defendant and was then in Durham, had assented to the suggested application of the $3,700 or, rather, had said it was the proper thing to do. The remaining letter, dated 23 May, 1917, asked for a detailed statement of defendant's account with the plaintiff so that it will show the balance on deposit subject to check; a list of defendant's notes discounted by the plaintiff, with face value dates, and maturity of the same, giving as a reason for making the request that defendant had just employed a new auditor who would post and balance its books for the closing fiscal year.
The jury, under the evidence (and the charge of the court, which is not in the record), rendered the following verdict: *Page 305 
1. Did the plaintiff knowingly take, receive, reserve, or charge a greater rate of interest than 6 per cent per annum on the notes set up in the complaint, or any notes of which the said notes set up in the complaint are renewals, as alleged in the answer? Answer: "No."
2. What amount, if any, is the defendant entitled to recover of the plaintiff on the counterclaim set up in the answer? No answer.
3. What amount, if any is the plaintiff entitled to recover of the defendant? No answer.
Judgment was entered upon the verdict for the plaintiff and an appeal taken by the defendant.
The exceptions in this case, as will appear by reference to our statement of it, relate chiefly to the admission and exclusion of testimony. There is no exception to the charge, which is not set forth in the record, and we must, therefore, assume that it was correct in every respect and perfectly satisfactory to the appellant.Muse v. Motor Co., 175 N.C. 466. We make brief reference to this fact because it makes it unnecessary for us to decide whether the transaction between the parties was usurious on its face or tainted per se
with usury, if it were such as the defendant contends that (289) it was, or if, in other words, the defendant has established his claim, that the 20 per cent of the discounted notes was left in the bank by it and held by the bank, without being subject to defendant's check, under an express agreement of the parties to that effect. As the charge is presumed to have been correct, we must conclude that the judge instructed the jury as to all phases of the case, and that they found under the evidence and charge either that there was no such agreement or, if there was such an agreement, the jury were instructed that it was not usurious on its face, and therefore they must find whether there was any actual intent to charge unlawful interest, and that, under the last instruction, they did find that there was no such intent. If they had found that there was an agreement, as claimed by the defendant, and the judge charged that it was usurious in law, they could not have answered the first issue "No" if they had followed the judge's instructions, which we assume that they did. So that, upon a fair and proper construction of the verdict, which should be read in the light of the evidence and what presumably was the charge (Southerland v. Brown,176 N.C. 187; Jones v. R. R., 176 N.C. 260), they either found that there was no such agreement or that there was no intent to violate the *Page 306 
statute. We are of the opinion, though, that the jury found there was no agreement reserving unlawful interest, which of course would cut the defendant's case up by the roots, as the existance of such an unlawful agreement is the basic fact of his whole contention. In any aspect of the case, therefore, the question as to whether there was a transaction infected with usury is not before us, and will not be hereafter, unless there was some substantial error in the rulings upon the evidence, which we now proceed to consider; but as preliminary to this discussion we may state tentatively, and without being committed to them, a few general principles of the law concerning the main question and as they are found in books. The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the loan than is allowed by law. To sustain the defense of usury there must be satisfactory proof of some unlawful gain or advantage secured by the creditor. The form of the agreement is immaterial, since any shift or device by which illegal interest is arranged to be received or paid is usurious. As above stated, it is not essential to usury that the contract to pay illegal interest should be absolute; the payment of the illegal interest may depend upon the happening of some contingent event, provided the principal is not put at hazard. Neither is it at all necessary that the parties shall have designated the usurious compensation as interest, eo nomine. If the money, property, or other thing of value agreed upon is intended as compensation for the use of the (290) principal sum it is, as a matter of law, interest. Thus it has been held that an agreement for unlawful interest may, it seems, be inferred from an unexplained retention by the lender of a portion of the loan, the whole amount of which bears interest at the highest rate. Webb on Usury, sec. 28 and notes; 27 Am. and Eng. Enc. of Law, 925;Cummins v. Wire, 6 N.J. Eq. 73; Andrews v. Poe, 30 Md. 485; MacKenziev. Garnett, 78 Ga. 251; Uhifelder v. Carter, 64 Ala. 527; Vilasv. McBride, 42 N.Y. St. 204; 17 N.Y.S. Rep. 171. And in another case it was said that where a person went to obtain discount at a bank voluntarily leaves a sum of money on deposit with the expectation that he will be thus enabled to obtain discount more readily, but without any understanding to not withdraw his money at any time, there is no usury. Appleton v. Fiske, 8 Allen (Mass.) 201. The following illustrations have been given: Where, in a State in which the legal rate of interest is 10 per cent, a municipal corporation attempts to satisfy a judgment against it by issuing warrants at the rate of one dollar in warrants for every seventy-five cents of the judgment, such warrants are void for usury. Clark v. Des Moines, 19 Iowa 199. In determining whether usury exists in any particular case, the proper inquiry is not necessarily whether the borrower is to pay for the use or forbearance *Page 307 
but what is the lender to receive for the loan or forbearance of his money. Where the entire gain of the lender is derived from the borrower, the profit to the former and the cost to the latter are commensurate; but where there are intervening sources of profit to the lender or expense to the borrower, the proposition stated in the last preceding sentence may have application. Webb on Usury, page 30 and notes. InEringhaus v. Ford, 25 N.C. 522, where a bank of this State agreed to lend to an individual notes of a Virginia bank, which were at a depreciation in the market, below both specie and the notes of the bank of this State, and the borrower was to give his note at ninety days, to be discounted by the bank, and to be paid in specie or in the notes of the bank making the loan, it was held that the note given in pursuance of this agreement was void for usury, though the borrower stated at the time that he could make the Virginia notes answer his purpose in the payment of his debts to another. Usury consists in the unlawful gain, beyond the rate of 6 per cent, taken or reserved by the lender, and not in the actual or contingent loss sustained by the borrower. The proper subject of inquiry is, what is the lender to receive, and not always what the borrower is to pay, for the forbearance. It is generally true that to constitute usury there must be an agreement between the lender and the borrower by which the latter pays or promises to pay and the former knowingly receives or secures a higher rate of interest than is allowed by the statute. Webb on Usury, p. 30, sec. 30. As to the practice and procedure, it has been said that in all cases the (291) purpose should be to ascertain the intention of the parties. The intent may be construed by the law upon the face of the usurious contract, as we have clearly shown, or it may be proved as a fact. Since, therefore, the question of usury may depend sometimes upon the purpose and intent of the parties, it follows that usury may be a question of law or fact, or a mixed question of both law and fact. There cannot be usury without facts; and those facts, which may include the actual intent, when they are controverted, must be tried and ascertained by the jury. Whether upon those facts the transaction be usurious is a question of law which addresses itself alone to the court. But the question of unlawful interest is commonly one for the jury, where it does not follow as a clear deduction from undisputed facts, or is not imputed by the mere construction by the court of a written instrument, unaided by extrinsic evidence, when it becomes a question of law to be determined by the court. The latter is the case where the contract on its face and by its own terms per se imports usury. Webb on Usury, sec. 434;Lynchburg v. Norvell, 20 Gratton 601; Smith v. Hathorn, 88 N.Y. 211;Walker v. Bank of Washington, 44 U.S. 61; Levy v. Gadsby, 3 Cranch (U.S.) 80; Banning v. Hall, 72 N.W. Rep. (Minn.) 817; Woolsey v. *Page 308 Jones, 84 Ala. 88. But we need not decide these questions as they are not directly involved, and merely refer to them incidentally as they serve to throw some light upon the other questions which are presented for decision. They will all be found fully treated in Webb on Usury, secs. 27 to 41, pp. 27 to 31, and secs. 454, 455, pp. 500 and 501, and cases in the notes. See, also, Grant v. Morris, 81 N.C. 150; Burwell v. Burgwyn, 100 N.C. 389;Bennett v. Best, 142 N.C. 168; Yarborough v. Hughes, 139 N.C. 199; Millerv. Ins. Co., 118 N.C. 612; Meroney v. B. and L. Asso., 116 N.C. 882;Arrington v. Goodrich, 95 N.C. 462. This brings us to the rulings on evidence.
1. The objection, based upon the exclusion of the question addressed to the witness Guy Branson, as to instructions from Mr. Wysong, cannot be sustained for several reasons, one of which is that it does not appear what answer he would have given. Jenkins v. Long, 170 N.C. 269; Rawlsv. R. R., 172 N.C. 211; Smith v. Comrs., 176 N.C. 466. He might have answered "No," in which case the defendant would have proved nothing. If we should hold this ruling to be error, and reverse, when the witness is called at the next trial he may answer "No," and we will have been at great pains to decide a matter utterly immaterial. The question also was leading, and it was discretionary with the court whether it should be excluded. S. v. Price, 158 N.C. 641: McKeel v. Holleman,163 N.C. 132; S. v. Williams, 168 N.C. 191. The defendant's witness, J. R. Brown, testified four times and without objection, that a 20 per cent deposit was required at all times, though we do (292) not place our decision on this ground. It merely goes to show that defendant was not materially harmed, even if the ruling was technically erroneous. The witness, J. R. Brown, testified at least three times, under cross-examination, to the instructions from Wysong as to the 20 per cent deposit without any protest from the plaintiff. It would seem, therefore, that the fact was not seriously contested, and if so, no real harm was done by the judge's ruling, Weathersbee v. Goodwin,175 N.C. 234; and we would be slow to reverse unless it was reasonably clear that the ruling was prejudicial. Weathersbee case, supra;S. v. Davis, 175 N.C. 723, 729; Goins v. Indian Tr. School, 169 N.C. 737;Elliott v. Smith, 173 N.C. 265; Mitchell v. Bottling Co.,174 N.C. 771.
We need not, therefore, consider whether the order given by Wysong to the witness, J. R. Brown and Guy Branson, and testified to by them, should be regarded as a self-serving declaration by Wysong, as contended by the plaintiff. They swore to the fact of retaining the 20 per cent, and it is claimed by defendant to be, therefore, competent for them to state that it was done under an order given at the same time, which was pars res gestae
as qualifying or explaining their act. Jones on *Page 309 
Ev., sec. 346. But however this may be, the result will be the same, in the view we take of the case.
2. As to the testimony of John F. Wiley, plaintiff's cashier, relating to conversations with O. C. Wysong, defendant's former president, who is dead. A corporation can act only through its agents, and it is competent to prove the agent's declaration as against the principal, when it was made about matters within the scope of his authority and relates to the transaction in which he was then engaged on behalf of the principal.Gwaltney v. Assurance Society, 132 N.C. 925; Walker v. Cooper,159 N.C. 536; Molyneux v. Huey, 81 N.C. 106; Roberts v. R. R.,109 N.C. 670; Sprague v. Bond, 113 N.C. 551 (557). Mr. Wysong was acting as defendant's agent throughout the transaction, and was its leading officer. The evidence, therefore, falls within the principle just stated. But the defendant's objection is mainly founded upon another ground, that the conversations between the two officers, one of them Mr. Wysong, the defendant's agent, being dead, is forbidden by Revisal of 1905, sec. 1631. We do not think so. A slight examination of the clear and excellent analysis of that section (Code of 1883, sec. 589), made by the present Chief Justice in Bunn v. Todd, 107 N.C. 266, will show that no such case is presented as will exclude John F. Wiley as a witness or render his testimony incompetent. Mr. Wiley is not a party to the action, nor did he claim through or under any one who is a party. He did not testify in behalf of himself or in behalf of any party succeeding to his title, for he had none, but solely as a witness for the plaintiff; nor did he testify against the representative of a deceased person, or against any person deriving his interest through (293) such person, nor as to any personal transaction or communication between the witness and the person since deceased, whose representative is a party to the action. The exception to this rule of exclusion stated in Bunn v. Todd, supra, does not apply to the facts of this case. That the suit must be prosecuted against the representative of a deceased person, which is the capital requirement of the section, has no application here as this is not that kind of a suit, there being no representative of a deceased person as defendant, or even as plaintiff. There is nothing but the bare fact that Mr. Wiley had and interest as stockholder in the plaintiff bank, and was one of its officers, and Mr. Wysong had an interest in the defendant corporation and was one of its officers. But this does not bring the testimony admitted by the court within the prohibition of section 1631. It may be that the section should be broadened so as to include such a case, but that must be done by legislation and not by our construction. If it would be wise and fair for this change to be made, the Legislature which declares the policy of the State must say so as it makes the law, and we merely declare *Page 310 
what it is. This case is not within the spirit of the section, and certainly not within its letter. Bunn v. Todd, supra, has frequently been approved since it was decided, the two most recent cases which expressly endorse its statement of the rule and apply it being Brown v. Adams,174 N.C. 490, and Pope v. Pope, 176 N.C. 283. Mr. Wysong was not a party to the last notes of the series of renewals, which are now sued on, nor is his estate sought to be charged with any liability in this action through his personal or legal representatives. As no claim was being or could be asserted in this action against the estate of Mr. Wysong or his representatives, and as the defendant derived no title or interest through or under him, Mr. Wiley's testimony did not relate to such a personal transaction or communication with a deceased person, as is forbidden by section 1631 of the Revisal. Roberts v. R. R., 109 N.C. 670; Sprague v.Bond, 113 N.C. 551 (557); Gwaltney v. Assur. Soc., 132 N.C. 925, supra. Wysong's estate will not be affected in law by the event of this action, although he may have been an endorser on some of the renewals given prior to the notes in suit, and if he had such a vague, indirect and eventual interest the suit is not against Mr. Wysong's representatives, and the witness was not, therefore, testifying against the latter within the meaning of the statute, but only against the defendant, which is an incorporated company.
We do not see how Mr. Wysong derived any interest in this suit under the defendant, as was argued, and if he had any personal interest in the transaction it is not represented by his administrator in this action.
There are other answers to the contention which need not be (294) stated.
It results that there is no error in the record, and it must be so certified.
No error.
Cited: Fry v. Utilities, 183 N.C. 293; Sitterson v. Sitterson,191 N.C. 321; Pratt v. Mortgage Co., 196 N.C. 297; McKinney v. Sutphin,196 N.C. 322; S. v. Lawrence, 199 N.C. 483; Richardson v. Satterwhite,203 N.C. 117; S. v. Coffey, 210 N.C. 564; Wilder v. Medlin, 215 N.C. 546;Cartwright v. Coppersmith, 222 N.C. 575; Fanelty v. Jewelers,230 N.C. 697; Hardison v. Gregory, 242 N.C. 331; Litaker v. Bost,247 N.C. 306. *Page 311