PEOPLES UNITED BANK, RECEIVER OF THE BANK OF SOUTHPORT, v. PERCY WELLS AND JAMES HOWARD.

(Filed 2 April, 1924.)

1. **Banks and Banking—Officers—Imputed Knowledge—Bills and Notes—Fraud—Principal and Agent.**

   Knowledge of fraud in the procurement of a note by a president of a bank will not be imputed to a bank when he has acted therein to his own personal advantage, and in which the bank has neither participated nor derived any profit or advantage.

2. **Same.**

   A president of an insolvent bank induced a purchaser for some of his own stock by fraudulently representing that it was worth above par, and to get the purchase-money, sent the purchaser's note therefor to a

subsidiary bank of which he was only a nominal or inactive president, and which was acted upon and accepted and discounted by the officers thereof whose business it was to pass upon such matters, without knowledge or participation in the fraud, the note being payable to the subsidiary bank for which they were acting: *Held*, the fraud perpetrated by the seller of the stock will not be imputed to the subsidiary or purchasing bank, and it may recover thereon.

**3. Same—Burden of Proof.**

Where fraud is shown in the procurement of a note, in the payee's suit thereon the burden of proof is on the plaintiff to show that he was a purchaser for value, before maturity, and without knowledge of the fraud.

APPEAL by·defendants from *Calvert, J.,* at January Term, 1924, of BRUNSWICK.

In May, 1922, the Bank of Southport and the Commercial National Bank of Wilmington were engaged in the banking business in their respective towns. Thomas E. Cooper was president of both banks, residing in Wilmington and devoting his time to his bank at that place. He visited Southport once or twice a year in connection with the affairs of that bank, which sent him statements of its affairs about twice a month. Occasionally the bank at Southport had more cash than it was possible to use and would so notify Cooper at Wilmington, and occasionally he would send to the Southport bank paper for discount which it would sometimes discount, but not always.

In May, 1922, the shares of stock in the Commercial Bank of Wilmington which had stood in the name of W. B. Cooper were transferred to his brother, Thos. E. Cooper. At that time such bank was absolutely insolvent, which fact, as stated in the facts agreed, was known to W. B. Cooper and Thos. E. Cooper, chairman of the board and president respectively of that bank.

The note sued on was given as the purchase price of 50 shares of the capital stock of the Commercial Bank, and was sold by Thos. E. Cooper to the defendant Wells, with the representation that such stock was worth $116 per share. These representations were relied upon by Wells, and he was thereby induced to purchase the stock and make the note signed by himself and endorsed by his codefendant, James Howard. The Southport bank loaned on the note its·face value of $5,000 less discount of 6 per cent.

At that time the affairs of the Bank of Southport were actively attended to by the vice-president and cashier, both of whom resided at Southport and who passed upon the acceptance of this note. The note was transmitted to them in a letter from Thos. E. Cooper, who, after describing the note, which he enclosed, stated that it was perfectly good and that Wells and Howard were worth $100,000 net. It is uncontradicted evidence that neither Berg nor Ruark, officers of the South-

port Bank, who discounted the paper, at the time had any knowledge of the insolvency of the Commercial National Bank, nor of the fact that this note had been given by Wells in payment for stock of Commercial National Bank purchased by him from Thos. E. Cooper. The only information they had was that contained in the aforesaid letter of Cooper to the Bank of Southport, which did not inform them of the true condition and circumstances under which the note was taken. The note became due 26 August, 1922, and was renewed for 60 days, and then again renewed on 25 October, 1922, which last renewal is the note in suit.

The jury found upon the issues submitted to them:

(1) Was the note in controversy procured by fraud and misrepresentation as alleged in the answer? Answer: Yes.

(2) If so, had the Bank of Southport, at the time of the purchase of said note, notice of such alleged fraud? Answer: No.

(3) Did the Bank of Southport purchase said note for value and before maturity? Answer: Yes.

(4) What amount, if any, is the plaintiff entitled to recover of the defendants? Answer: $5,000, with interest from 24 December, 1922.

The court rendered judgment for that amount in favor of the plaintiff, and the defendants appealed.

*Jos. W. Ruark and Ruark & Campbell for plaintiffs.*
*Bellamy & Bellamy and Rountree & Carr for defendants.*

CLARK, C. J. The defendants moved for nonsuit upon the ground that "Thos. E. Cooper was president of the Bank of Southport and participated in the discount of the note by that bank, and any knowledge of any informality in the note or any defense thereto known to him is imputable to that bank, or, more properly, is the knowledge of the bank itself." There is no evidence that Thos. E. Cooper participated in the discounting of the note by the Bank of Southport. It is true that he transmitted the note from Wilmington to that bank with a statement of the entire solvency of the signer and endorser thereof. There is nothing in the record to justify the claim in the defendant's brief that the note was discounted by Thos. E. Cooper with the Commercial National Bank. The note on its face is payable to the bank at Southport.

The court charged the jury that the burden of proof was upon the plaintiff to satisfy the jury, by the greater weight of the evidence, that the Bank of Southport at the time of the purchase of the note had no notice of the fraud, and that it was admitted that Thos. E. Cooper was president of both the Commercial National Bank and the Bank of

Southport; that as said Cooper was at that time president of the Bank of Southport, and sent the note to that bank for purchase, any notice or knowledge he had of the fraud is presumed to be imputed to the bank; that is, it is presumed that the bank had such notice or knowledge of the fraud as its president (Cooper) had, and added the following, which is excepted to: "This presumption would be rebutted, however, if Cooper at the time, and with respect to this transaction, was acting for himself and in hostility to the Bank of Southport, or if, as president of both the Bank of Southport and the Commercial National Bank, he felt such a greater interest in the affairs of the Commercial National Bank, that because of such interest he refrained from informing the other officers of the Bank of Southport of the circumstances of the sale of the stock to Wells and the making by Wells of the note in question."

The defendants also except to the following charge: "The plaintiff further contends that the testimony tends to show that though Cooper was president of the Bank of Southport, yet that it was a personal matter to him, and having committed a fraud in the sale of the stock, that he was then acting, in the matter of the sale of the note to the Bank of Southport, in hostility to the Bank of Southport; or, the plaintiff contends that you should find, if there was a sale of the note by the Commercial National Bank to the Bank of Southport, there is testimony to show that Cooper was favoring the Commercial National Bank, and because of his feeling greater interest in that bank he refrained from giving to Ruark and Berg, the officers of the Bank of Southport, information of the circumstances under which the stock was sold and the note was given."

The record does not disclose any request by the Bank of Southport at or about that time to send down any paper for discount. There is no endorsement shown by the Commercial National Bank of the note in suit.

Ordinarily a bank is presumed to have notice of matters which are known to its president, upon the theory that he will, in the line of his duty, communicate to the bank such information as he has, but the law recognizes the frailty of human nature, and where the president has a personal interest to serve or is acting in a transaction in his own behalf, the presumption does not obtain that he will communicate to the bank matters which are detrimental to him. *Grady v. Bank,* 184 N. C., 162; *Anthony v. Jeffress,* 172 N. C., 381; *Corp. Com. v. Bank,* 164 N. C., 358; *Brite v. Penny,* 157 N. C., 114; *Bank v. Burgwyn,* 110 N. C., 273.

In *LeDuc v. Moore,* 111 N. C., 516, it appeared that Moore was president of the bank and, with the cashier, constituted the discount committee, and actually participated as a member of such committee in discounting the note in question.

BANK v. WELLS.

*Bank v. Burns,* 49 L. R. A. (N. S.), 764, also differs from this case in that the payee of the note in that case was president and active manager of the bank; that he sold and discounted the notes to the bank, and in so doing acted for himself personally and as endorsee and also for the bank as its president; that no other officer or person connected with the bank had anything to do with the purchase of the note, and it had no notice or knowledge of any facts that would invalidate said notes in the hands of the president. That case cites *Innerity v. Bank,* 139 Mass., 332, as follows: "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he did not communicate the facts in controversy, as where the communication of the facts would have necessarily prevented the consummation of the fraud the agent was engaged in perpetrating."

In *Curtis v. U. S.,* 262 U. S., 215, the agent whose knowledge was imputed to the principal was actively carrying on for the principal the specific work for which the agent had been appointed.

If the Commercial National Bank, of which Cooper was actively the president, had discounted this paper with said bank and transmitted it to the Bank of Southport, the knowledge which he possessed would have been imputed to the bank in Wilmington, but there is no evidence to that effect. It does appear that he was president only in name of the Bank of Southport and did not actively manage the affairs; that he lived in Wilmington, where the Commercial National Bank did business, and only went to Southport once or twice a year in connection with the affairs of the Bank of Southport, to which the paper on its face was made payable.

Upon the evidence the jury might reasonably infer that Thos. E. Cooper "felt such a greater interest in the affairs of the Commercial National Bank, and that because of such interest he refrained from informing the officers of the Bank of Southport of the circumstances of the sale to Wells and the making by Wells of the note in question."

The Commercial National Bank, of which Thos. E. Cooper was the active president and manager, would be fixed with the notice of fraud practiced by him upon the defendants in this connection, but this would not be true as to the Bank of Southport, of which he was only nominally president, and whose affairs, upon the evidence, were managed by its vice-president and cashier.

We think that there is no error in the charge in the particulars referred to. In *Bank v. Burgwyn,* 110 N. C., 267, it was held that a bank was not affected with constructive notice by reason of the actual knowl-

edge of its president, when the latter was dealing with it in his individual capacity, and not acting officially for the bank in any manner concerning the particular transaction.

It has been frequently held that notice to an officer of a bank or other corporation of an equity will not be imputed to the bank or corporation when such officer was clearly not dealing for the bank or corporation, but was dealing for himself with the bank or corporation. This case is stronger because here Thomas E. Cooper made an outside transaction, the sale of stock in another bank to defendants, and had no part in discounting the note they gave which is in suit.

The evidence justified the jury in finding that in this case, where the note was payable to the Bank of Southport and discounted by it, the mere fact that Thos. E. Cooper, who made the fraudulent representations and profited by it, would not be imputed to the Bank of Southport, of which he was only nominally president, when its officers, actually and actively conducting its affairs, had no knowledge of the fraud perpetrated upon the defendants which was in nowise a part of the transaction by which the defendants executed their note to the Bank of Southport and received the net proceeds of the same.

The only other assignment of error in the defendant's brief, to the evidence, does not require discussion.

The Bank of Southport loaned the defendants the $5,000 on their note now in suit, and the jury having found that such bank had no notice of the fraud, and that it purchased the note for value and before maturity, it was not affected by the fraud of Thos. E. Cooper in procuring the defendants to execute said note for his individual benefit, and is entitled to recover the sum loaned.