CLEMENT RICHARDSON v. CULLEN SATTERWHITE.

(Filed 29 June, 1932.)

1. **Evidence F d—Letter containing admission by attorney acting within scope of authority held competent against client.**

   An attorney employed to check over the accounts of his client in order to ascertain its correctness acts within his implied authority, at least, as an agent in writing a letter to the creditor the day following his examination and investigation of the books, admitting the correctness of a certain item and denying the correctness of others, and the letter is admissible against the client in an action in which the item admitted to be correct by the attorney is disputed.

2. **Same—Admission of attorney employed to check account stands upon the same footing as admissions of any other authorized agent.**

   Where an attorney writes a letter in the course of his employment acknowledging for his client the correctness of a certain item as it appeared upon the creditor's books, the letter is competent upon the trial as an admission of an agent on the question of the correctness of the item, but it does not have the effect of a solemn admission *in judicio* but stands upon the same footing as an admission of any other authorized agent.

3. **Account Stated A a—Lapse of time before objecting to account held not to render it an account stated.**

   In this case there was a long delay by the debtor giving a note secured by mortgage on lands in settlement of an account in disputing the validity of the note and mortgage for want of consideration upon the contention

that the note was given for land never conveyed: *Held*, the lapse of time and the giving of note did not bar the maker from establishing by his evidence his matter in defense.

4. **Cancellation of Instruments A b—Fact that son of mortgagee bid in property and sold it to cousin held not evidence of fraud.**

The fact that one member of a family conveys land to another or borrows money from another member is not evidence of fraud or bad faith in the transactions.

5. **Principal and Agent C c—Knowledge of agent will not be imputed to principal where agent is acting for own benefit.**

Where a member of a loan committee of a bank passes favorably upon a loan for the payment of the purchase price of lands, and he has an interest in the transaction and works for his individual pecuniary benefit his knowledge of fraud or of outstanding equities against the land will not be imputed to the bank, but if the committeeman was acting for the benefit of some other person and not for his own benefit, such knowledge would be imputed to the bank.

CIVIL ACTION, before *Moore, Special Judge,* at Fall Term, 1931, of FRANKLIN. N. B. Finch and the Citizens Bank of Spring Hope were made parties to the suit.

On 5 March, 1924, the defendant, Cullen Satterwhite, and his wife executed and delivered a mortgage to N. B. Finch, trading as N. B. Finch and Company, upon a tract of land in Franklin County, to secure a note in the sum of $4,011.73. Satterwhite is a colored man more than 70 years of age, and alleged that he was illiterate. On 20 February, 1928, the said land was sold and purchased by F. D. Finch for the sum of $2,500. On 27 April, 1928, F. D. Finch and wife conveyed the land to the plaintiff, Clement Richardson. On the same date, to wit, 27 April, 1928, Clement Richardson and wife borrowed from the Citizens Bank of Spring Hope the sum of $3,500 and executed a promissory note to said bank and secured the same by deed of trust upon the property to O. B. Moss, trustee, which deed of trust was duly recorded on 16 May, 1928.

The defendant, Satterwhite, remained in possession of the land, and on 24 November, 1928, the plaintiff instituted the present action against the defendant Satterwhite, to recover possession of the land. Satterwhite filed an answer alleging in substance that he had been dealing with N. B. Finch, a general merchant, for many years; that he was illiterate and did not understand the nature of business transactions, and that when he executed and delivered the mortgage on 5 March, 1924, to secure the note for $4,011.73 he was not indebted to N. B. Finch and Company in any amount whatever. He further alleged that N. B. Finch, the mortgagee, was president of the Citizens Bank of Spring Hope at the

time of the sale of said land, and at the time the plaintiff, Richardson, purchased from F. D. Finch and executed the said $3,500 note. He further alleged that F. D. Finch, the purchaser of the land at the mortgage sale, was the son of N. B. Finch; that the plaintiff was a nephew of said Finch, and that by reason of the further fact that the said N. B. Finch was a member of the loan committee of said bank which loaned to the plaintiff the sum of $3,500, that the bank was charged with notice of the failure of consideration of the mortgage given by the defendant on 5 March, 1924, and hence that the bank was not an innocent holder of said $3,500 note.

The evidence for the plaintiff tended to show that the defendant, Satterwhite, had been dealing with N. B. Finch, trading as N. B. Finch and Company, for many years, and that he had executed to said Finch from time to time various liens and deeds of trust upon said land to secure the payment of advances made to him, and that the defendant made no complaint about the correctness of the account until the land was first advertised for sale in November, 1926.

The defendant, Satterwhite, offered evidence tending to show that the defendant, N. B. Finch, offered to loan him $4,000 to buy an additional tract of land, and that he executed a mortgage for that amount, but that the seller of the land declined to make a deed, and he then made demand upon N. B. Finch to return the papers to him. This was never done.

The following issues were submitted to the jury:

1. "Was the defendant indebted to N. B. Finch and Company on account of the indebtedness recited in the mortgage deed referred to in the pleadings and at the time of the attempted foreclosure of said mortgage deed, and, if so, in what amount?"

2. "Was the plaintiff purchaser for value of the lands in question and without notice of the equities of the defendant, as alleged in the answer?"

3. "Did the Citizens Bank of Spring Hope, N. C., take its deed of trust upon said lands for value and without notice of the equities of the defendant, as alleged in the answer?"

The jury answered the first issue "Nothing"; the second issue "No," and the third issue "No."

Upon the verdict judgment was entered decreeing that the plaintiff is not the owner nor entitled to the possession of the land described in the complaint. It was further ordered that the mortgage deed from Cullen Satterwhite and wife to W. B. Finch and Company, dated 25 March, 1924, be adjudged to be "void and of no effect," and the clerk of the Superior Court of Franklin County is directed to cancel the same upon the records of said county," etc.

*Hobart Brantley and White & Malone for plaintiff.*
*W. L. Lumpkin and Yarborough & Yarborough for defendant.*

BROGDEN, J. On 20 August, 1925, the defendant, Satterwhite, went to the place of business of N. B. Finch and Company, mortgagee, for the purpose of examining the status of the account. The defendant narrated the transaction as follows: "Mr. Ruffin was my lawyer before he died. He went down there and went over these accounts. He came by my house and got me. He came somewhere close about ten o'clock. I don't know what time, but . . . I got back home that night. He came up here and checked up everything. When Mr. Ruffin checked up everything I got up here about eleven o'clock and Mr. Ruffin had me gone away from here about two hours by sun. He and I went down there that day, and when we were coming back he said: "Satterwhite, they have got you in debt." . . . He said something was mighty wrong, and Mr. Finch told me himself that something was mighty wrong about my account. . . . When I got down there I went over the books with Mr. Roebuck. I can read figures, but I can't read writing. . . . We were going over all the accounts. . . . I didn't get a dollar of money."

On the next day, to wit, 21 August, 1925, William H. Ruffin, now deceased, and an eminent lawyer, wrote a letter to N. B. Finch and Company. The letter begins as follows: Louisburg, North Carolina, 21 August, 1925. Messrs. N. B. Finch and Company, Spring Hope, N. C. Gentlemen: *In re:* C. C. Satterwhite note adjustment. Mr. Lassiter and I, with Cullen's assistance, finished up our investigation of your books late yesterday evening, and checking over my work this morning I find that the only items now in question between us are checks made to your order as follows: 1913: 17 February, $5.00; 22 February, $5.00; 22 March, paid through Henry Satterwhite, $5.00; 6 September, $2.25; 9 September, $5.00. 1915: 29 May, $10.00; 12 June, $10.00. 1916: 29 May, $5.60. 1917: 13 January, $6.39. 1919: 21 April, $10.00; 28 April, $5.00; 19 April, $4.00; 16 May, $10.00; 8 July, $8.80; 26 September, $31.68; 2 December, $6.60. These checks total $130.32. He contends, as you know, that these were payments on account and not merely checks cashed for his accommodation. Possibly your cash account for these dates might throw some light on this question. . . . I could not always check up on your renewal notes, but from the best information I could get the last note, dated 5 March, 1924, for $4,011.73, is correct, and we raise no further question about the same. . . . I am advising Cullen to make every effort to pay this down out of the 1925 crops to $3,000 or less, and if he will do this I believe I can rein-

state his land bank loan and get him the amount appraised which is, as I recollect, $3,776.51. If you will make this adjustment with him at once it will encourage him to make stronger efforts to pay you and get this matter settled. I found Mr. Lassiter a most agreeable gentleman, quite competent and very courteous and obliging in checking over this matter with me under adverse circumstances. Very truly yours, Wm. H. Ruffin."

The plaintiff offered the foregoing letter in evidence, but the same was excluded by the trial judge. Consequently, the legal question arising is: Was the letter competent?

Wigmore, Vol. 2 (Second Edition), section 1078, states the general rule applicable to the facts as follows: "He who sets another person to do an act in his stead as agent is chargeable by such acts as are done under that authority, and so too, properly enough, is affected by admissions made by the agent in the course of exercising that authority. This question, frequently enough a difficult one, depends upon the doctrine of agency applied to the circumstances of the case, and not upon any rule of evidence." To like effect is the declaration of this Court in *Bank v. McEwen,* 160 N. C., 414, 76 S. E., 222. "Where the relation of attorney and client exists the law of principal and agent is generally applicable, and a client is bound according to the ordinary rules of agency by the acts of his attorney within the scope of his authority." See, also, *West v. Grocery Co.,* 138 N. C., 165, 50 S. E., 565; *Bank v. Miles Company,* 177 N. C., 284, 98 S. E., 769; *Bizzell v. Equipment Co.,* 182 N. C., 98, 108 S. E., 439, and *Myers v. Kirk,* 192 N. C., 700, 135 S. E., 788. Manifestly, if Satterwhite had examined the books of account of N. B. Finch and Company and had written a letter of like tenor, it could not be doubted that such letter was admissible in evidence. Consequently, if Mr. Ruffin was employed by the defendant to adjust the account and in the process of adjustment he made an examination of the books and immediately wrote a letter setting forth additional credits that should be allowed to his client, and undertaking to arrive at the amount which his investigation disclosed to be due, there is no sound reason or principle of law which would render the letter incompetent and inadmissible as evidence in the trial. The defendant testified that Mr. Ruffin was employed to examine and check the account. Hence it is apparent from the testimony of the defendant that the letter was written with the implied authority of defendant, at least, and certainly within the scope of the employment.

No case has been cited from this State discussing the admissibility of letters written by attorneys within the scope of the employment. The question, however, has been considered by courts in other jurisdictions,

and such letters have been generally held to be admissible. The following cases are in point: *McNamara v. Douglas,* 61 Atl., 368; *James v. Boston Electric Ry. Co.,* 87 N. E., 474; *Burraston v. First Nat'l. Bank,* 62 Pac., 425; *Loomis v. N. Y., N. H. & H. Ry. Co.,* 34 N. E. 82; *In re Rhinehardt's Estate,* 160 N. Y. S., 828. The principle is tersely stated in the headnote of the *McNamara case, supra,* as follows: "Where, in an action on a note given for plumbers' services, defendant claimed that she had been induced to give the note by fraud and duress, and that the work and materials furnished were of no value, it was error for the court to exclude a letter written by defendant's attorney in response to a bill for the work, in which the attorney requested an itemized bill of the materials used in the job, and stated that the defendant would pay the bill as soon as satisfied of its correctness; such letter being prima facie within the attorney's authority." The opinion of the Court says: "This letter was improperly excluded. It tended to show that up to the time of its date the defendant made no claim of fraud, or that the work and materials furnished were of no value. Had it been admitted, the defendant would have been at liberty to show, if she could, that her attorney, in writing it, went beyond his authority. Prima facie it was within it."

While the letter in the case at bar, is admissible in evidence, it of course does not conclusively bind the defendant or give it the effect of a solemn admission in judicio. It would merely stand upon the same footing as the declaration of any other authorized agent.

The plaintiff contends that the giving of the note and mortgage by the defendant and the lapse of time before there was any challenge of the correctness of the amount due, constitutes an account stated. This contention is not sustained. The case of *Gooch v. Vaughan,* 92 N. C., 610, is directly in point. The Court says: "The account rendered, and the long delay in objecting to it on account of suggested errors therein, do not necessarily conclude Gooch. The strong presumption is that he examined and accepted it as correct, and he is bound by it, and it ought not to be disturbed, unless he shall allege and prove some substantial error, mistake, omission, or fraud, vitiating it. This he has the right to do, if he can, and in case of success, to have the just correction made. The burden is on him to prove such allegation." *Davis v. Stephenson,* 149 N. C., 113, 62 S. E., 900.

Plaintiff contends that there was no evidence that the Citizens Bank of Spring Hope was not an innocent holder of the $3,500 note executed and delivered to it by the plaintiff. The plaintiff requested the court in apt time to instruct the jury to answer the second issue "Yes." The evidence bearing upon the execution of the $3,500 note is substantially

as follows: N. B. Finch, the mortgagee, was president of the bank and a member of the loan committee. He sold the land to his son, F. D. Finch. The son, F. D. Finch, conveyed the land to the plaintiff, who is a nephew of the mortgagee. Obviously, the fact that one member of a family conveys land to another or borrows money from another is no evidence of fraud or bad faith, for there is no law which forbids kinsmen to deal with each other, and no court has ever held that such dealing in itself was a badge of fraud or bad faith. N. B. Finch, mortgagee and president of the bank, as a member of the loan committee, approved the loan for $3,500, and testified that the money was "paid over to me" on the amount his son, F. D. Finch, owed him. The trial judge instructed the jury that if N. B. Finch "negotiated this loan for his own benefit, that is, if he negotiated this loan in the bank for his own benefit, then such knowledge as he had would not be imputed to the bank, but if for some other person, and not for his own benefit, then it would be imputed to the bank; that is if it was his transaction and not for some other person, then the bank would not be charged with the knowledge in dealing for himself, but if he had knowledge of these equities, and the transaction was for someone else, then this knowledge would be imputed to the bank." This instruction is in accordance with accepted principles of law announced in *Bank v. Wells,* 187 N. C., 515, 122 S. E., 14; *Bank v. Howard,* 188 N. C., 543, 125 S. E., 123; *Trust Co. v. Anagnos,* 196 N. C., 327, 145 S. E., 924.

　　New trial.