THE NATIONAL BANK OF BURLINGTON v. O. M. MARSHBURN.

(Filed 8 June, 1940.)

1. **Bills and Notes §§ 9f, 29—If person, in wrongfully procuring note, acts as agent for holder, the holder is not a holder in due course.**

Defendant's evidence tended to show that he executed the note in suit to be used to pay for shares of stock of the corporate payee, that the stock was never delivered to him and consequently the note was never delivered by him, but that the note was procured from his office without his knowledge or consent by the president of the payee who was also a collecting agent for a bank, and who turned the note over to the bank as collateral security for his company's note. *Held:* If in procuring the note the president of the company was acting as an agent of the company, knowledge of the infirmity, nothing else appearing, would not be imputed to the bank and it would be a holder in due course, while if, in procuring the note, he was acting as agent of the bank it would have imputed knowledge of the infirmity and would not be a holder in due course, and therefore, it being admitted that he was an agent of the bank, an instruction that the maker could not be held liable if the note had been taken by an agent of the bank, without further elaboration, is error.

**2. Appeal and Error § 41—**

Where a new trial is awarded on one assignment of error, other assignments relating to matters which may not arise on the subsequent hearing need not be considered.

APPEAL by plaintiff from *Carr, J.*, at November Term, 1939, of ALAMANCE.

*Allen & Madry for plaintiff, appellant.*
*J. W. Grissom for defendant, appellee.*

SCHENCK, J.    This is an action instituted on a note signed under seal by the defendant, payable to the Home Fertilizer & Chemical Company for $472.10, dated 1 November, 1937, due 1 July, 1938, and negotiated by the payee to the plaintiff.

The defendant admits signing the note in suit, but denies making any delivery thereof, or receiving any consideration therefor, and alleges that the plaintiff took the note with notice of the infirmities therein and was not therefore a holder in due course.

The plaintiff's evidence tended to show that the Home Fertilizer & Chemical Company was indebted to the plaintiff in a substantial amount and executed its note for such indebtedness and gave the note in suit, together with others, as collateral therefor, and that its note was not paid and the plaintiff thereby became the holder in due course of the note in suit.

The defendant's evidence tended to show that one Crenshaw sought the note of the defendant to use as collateral for the note of the Home Fertilizer & Chemical Company to the plaintiff, and that he agreed to execute and deliver the note in exchange for 500 shares of stock in the fertilizer and chemical company of which Crenshaw was president, and did sign the note and intended to deliver it when the shares of stock were delivered to him, and placed the note in his check book in his office to await the procurement and delivery to him of such shares of stock, but that said shares of stock were never delivered to him and the note was consequently never delivered by him; that said note was taken from his office by Crenshaw and delivered to the plaintiff bank without his (defendant's) knowledge or consent. And further, that in procuring the note in suit in the manner in which it was procured Crenshaw was acting as an employee and agent of the plaintiff bank.

The plaintiff's evidence, more particularly on rebuttal, tended to show that while Crenshaw was an employee of the plaintiff and its agent for the purpose of collecting certain notes due it and placed in his hands for the purpose of collection, he had no further authority than to collect

the notes placed in his hands; that Crenshaw had no authorization from the plaintiff bank to procure for it collateral for the note of the Home Fertilizer & Chemical Company held by it, and that in procuring the note in suit, however he procured it, he was acting as agent of the fertilizer and chemical company that he might place the note as collateral for the fertilizer and chemical company's note to plaintiff and thereby strengthen the credit with the bank of the company of which he was president; that the plaintiff bank had no knowledge of the manner in which the note in suit was procured.

There was a definite issue drawn as to whether Crenshaw at the time he procured the note in suit was acting as agent and in the interest of the plaintiff bank, or as agent and in the interest of the Home Fertilizer & Chemical Company. This issue was vital to the determination of the defendant's liability, because, ordinarily, if Crenshaw was acting as agent and in the interest of the plaintiff, and within the scope of his authority as such agent, in the procurement of the note in suit, then the plaintiff would be fixed with notice of the infirmity in said note and would not be a holder thereof in due course; whereas, ordinarily, if Crenshaw was acting as agent and in the interest of the payee in the note, the Home Fertilizer & Chemical Company, of which he was president, in the procurement of the note in suit, then the plaintiff would not be fixed with notice of the infirmity in the note and would be a holder thereof in due course.

His Honor charged the jury: "Mr. Marshburn would not be liable upon a note stolen out of his possession by an agent of the plaintiff." This is assigned as error by the plaintiff, and we are constrained to sustain the assignment.

There was no controversy as to Crenshaw being an agent of the plaintiff, or as to Crenshaw being an agent of the Home Fertilizer & Chemical Company. The question presented was in which capacity and in whose interest was he acting when he stole the note in suit, if he did steal it. If he was acting in the scope of his employment by and in the interest of the plaintiff, then Mr. Marshburn would not be liable, but if he was acting as president or agent of the fertilizer and chemical company and in its interest, then Mr. Marshburn would be liable, nothing else appearing. *Trust Co. v. Anagnos,* 196 N. C., 327; *Bank v. Wells,* 187 N. C., 515.

Since there must be a new trial for the error indicated, it becomes unnecessary to discuss the other interesting assignments of error set out in appellant's brief, since the questions presented thereby are not likely to be raised on another trial of the case.

New trial.