The lands in controversy were originally conveyed to Joseph Jordan, John Jordan, William Jordan and Martha W. Jordan, who married A. I. Parker prior to 1873. The deeds made subsequent to 1873 were made to Joseph Jordan, John Jordan, William Jordan and Martha W. Parker. The family lived together as one family and operated a hotel and carried on certain farming operations until about the year. 1884, when Joseph Jordan married and moved away. Thereafter, sex partition proceedings were brought to partition the land above referred to. These proceedings were brought in the name of William Jordan, A. I. Parker and wife, Martha W. Parker, v. J. J. Jordan. John Jordan, *Page 424 
the other tenant in common, died without issue and his share descended to his brothers and sister. Orders of sale were duly made by the clerk, directing a sale of all the land embraced in the six special proceedings and a division of the proceeds among the parties entitled thereto according to law. W. P. Show was appointed commissioner of the court to make the sale. The commissioner advertised the land and set the sale on 4 August, 1884. On that day the parties entered into a written contract as follows, to wit: "In the matter of the sale of real estate advertised to be sold this day by W. P. Shaw, commissioner, the parties agree as follows:
"A. I. Parker, Mrs. Martha W. Parker and William Jordan shall become the purchasers of the following lots, being the whole property advertised by the said Shaw:
"The Old Town Farm, the Winton Ferry, jail lots in Winton, courthouse lots, Northcott lot, hotel square, stable lots, Riddick land and wharf property in Winton, at the aggregate sum of $18,000, as the value of the whole; and in order to determine the value of the separate parcels above mentioned, upon the basis of $18,000 for the whole, the appraisers shall be selected — one by J. J. Jordan, one by the parties hereto, and the third by the two appraisers selected as aforesaid. The property shall be reported by the said Shaw to the court as sold to the above-named parties at the sum of $18,000 at the sums named by the said appraisers for the respective parcels and shall by consent be confirmed by the court and the parties respectively bind themselves, each to the other in the sum of one thousand dollars, that they will keep and perform the agreement fully and faithfully.
"It is further agreed, that all the stock, farming utensils and crops at the Old Town and the growing crops on any of said land plantation, except one mule called `Bet," is to become the property of the said A. I. Parker, Martha W. Parker, and William Jordan, and the said mule Bet shall become the property of the said J. J. Jordan. Neither party to be charged anything for said property.
"It is further understood and agreed that the rights of the respective parties hereto in the fund arising from said sale shall be in no way affected by this agreement, but each shall have the right to contest before the courts, as to his interest in the fund, arising from the sale of said land or any part thereof. as if this agreement had not been made and signed.
"The purchasers are to pay sex per cent interest upon their said purchase and are to pay over to J. J. Jordan the share to which he may be found entitled by 1 January, 1885. A. I. Parker, (Seal), Martha W. Parker, (Seal), William Jordan, (Seal), John Jordan, (Seal), J. J. Jordan, (Seal). 4 August, 1884. Witness: W. D. Pruden." *Page 425 
"On 20 October, 1884, the commissioner, W. P. Shaw, reported the sale to the court, stating in substance that one the day of the sale the parties had entered into a private agreement wherein it was stipulated that A. I. Parker, Martha W. Parker and William Jordan should become the purchasers of the property for $18,000.00, and that `the property described in the complaints sold for the sum of $18,000.00 in the way in which the sale is heretofore explained.'
"J. J. Jordan died in 1890, leaving him surviving a window, Mary Jordan, and Etta Jordan and Bettie Picot, his only children and heirs at law. Etta Jordan, daughter of J. J. Jordan, afterwards married Bernard Crocker, and if plaintiff in this action. John E. Vann and P. B. Picot were appointed administrators of J. J. Jordan.
"Nothing further was done in the matter until April, 1891, when Vann and Picot, administrators of J. J. Jordan, made a motion in the cause in each of the special proceedings, praying for a guardian ad litem for Etta Jordan and Bettie Picot, minor children of J. J. Jordan, deceased, and further requesting a confirmation of the sale of the property by W.P. Shaw, commissioner, in accordance with his report of 20 October, 1884. On 13 November, 1891, the clerk of the Superior Court confirmed the sale in each of said special proceedings and directed in each decree of confirmation that the commissioner "proceed to collect so much of said purchase money as is due to the administrators of said J. J. Jordan, and upon payment thereof to make title to the purchaser."
At this stage of the proceedings, all parties were brought in and there were various contentions and controversies involving the partnership business of Jordan Parker, which are not pertinent to the decision of this case. Finally, at the Spring Term, 1893, of the Superior Court of Hertford County, the following judgment was entered:
"Wm. Jordan, A. I. Parker and wife, Martha W., Parker, v. J. J. Jordan and wife, Mary E. Jordan, Bettie Picot, Etta Jordan and G. H. Mitchell, her guardian ad litem and John E. Vann as surviving administrator of J. J. Jordan.
"It appearing to the satisfaction of the court that cases on the civil issue docket of this Court for the Spring Term 1893, numbered 11, 29, 30, 31, 32, 33 and 34, have been compromised and settled upon terms that Wm. Jordan and A. I. Parker and wife, Martha W. Parker, pay all the costs in all of said actions to be taxed by the clerk, including allowance to L. L. Smith as referee and W. P. Shaw as commissioner for selling the property mentioned in the six last named cases, and pay to John E. Vann as surviving administrator of J. J. Jordan (P.B. Picot having died since this action was commenced), in full settlement of all matters litigated and set out either in the complaints or answers *Page 426 
filed in such actions, and said compromise and settlement appearing to be fair and just settlement of the matters embraced therein, it now by consent of all parties, ordered and adjudged that the aforesaid seven cases be and they are hereby consolidated.
"It is further considered and adjudged that John E. Vann as surviving administrator of J. J. Jordan, deceased, recover of the said Wm. Jordan and A. I. Parkers the sum of $4,500.00, and the costs in the aforesaid seven cases to be taxed by the clerk, including allowances in No. 11, to L. D. Smith, as referee, of $50.00, and allowance to W. P. Shaw, as commissioner, in the other six cases as is provided by the Code.
"It is further considered that said recovery is in full settlement and satisfaction of all matters involved in the seven cases before mentioned, and on payment of the said sum of $4,500.00 and interest from 17 April, 1893, till paid and the costs of said actions as herein directed, all of the assets of the late firm of Jordan Parker are to vest in and be the property of said Wm. Jordan and A. I. Parker, but nothing herein shall regulate in any way of affect the rights of said Wm. Jordan, A. I. Parker and Martha W. Parker as among themselves. R. B. Peebles, Atty. for John E. Vann, as surv. admr. of J. J. Jordan and other defendants. B. B. Winborne, Atty. for plaintiffs. W. K. Pruden, Atty. for plaintiffs. (Signed) John Gray Bynum, Judge Presiding."
Martha W. Parker died in 1914, intestate, and without issue and the plaintiff is one of her nieces. Her husband, A. I. Parker, died in January, 1920, leaving a last will and testament, naming John E. Vann as his executor and authorizing him to make sale, either publicly or privately, of all his real estate not specifically devised. None of the property involved in this action was specifically devised under said will except Dickinson's Square, which was devised to the defendants, John R. Jordan and W. Mills Jordan. The defendants, John R. Jordan and W. Mills Jordan are the sons of William Jordan, who died intestate in 1913.
The cause came on for trial, and the judge directed the jury to answer the issues in favor of defendants. From judgment thereon, plaintiffs appealed.
At the close of all the evidence, the plaintiffs stated and admitted in open court that the plaintiff, Etta Jordan Crocker, claimed no interest in said lands as an heir at law of her father, Joseph J. Jordan, and was claiming only as an heir of Martha W. Parker.
The plaintiff claims a one-twelfth undivided interest in the land involved in this controversy as heir at law of her aunt, Martha W. Parker. The defendants claim the land under the will of A. I. Parker, the husband of Martha W. Parker. The first question, therefore, to be determined is whether or not Martha W. Parker, upon her death in 1914, owned an interest in said land. If she did, the plaintiff is entitled to recover. If she did not. the plaintiff has no interest in the land and the judgment of the court was correct.
The record discloses that the land in controversy, except the Old Town farm, was originally conveyed to Joseph Jordan, John Jordan, William Jordan and Martha Jordan who afterwards married A. I. Parker. After the special proceedings for partition were instituted, the contract of 4 August, 1884, was duly entered into by the parties. On that date Martha W. Parker owned a one-fourth undivided interest in all the land except the Old Town farm. There was a dispute as to whether or not the deed for this property constituted an estate by entirety in A. I. Parker and Martha W. Parker.
The contract of 4 August provided that the property should be sold for $18,000.00. Therefore, each tenant in common, nothing else appearing, would be entitled to $4,500.00 of the purchase money. In the report of sale by the commissioner on 20 October, 1884, it was recited that the parties had entered into a private agreement wherein "they stipulated that A. I. Parker, Martha W. Parker and William Jordan should become the purchasers" of the land for the sum of $18,000. 00; and further recited, "the purchasers are part of parties plaintiff and have not paid the purchase of said property. They are to pay six per cent interest on the purchase price from 4 August, 1884, and to pay J. J. Jordan the amount that may be due him by 1 January, 1885, as will appear by reference to the agreement between the parties."
In the judgment at the Spring Term, 1893, all the cases were consolidated and it was adjudged that "John E. Vann, as surviving administrator of J. J. Jordan deceased, recover of the said William Jordan and A. I. Parker the sum of $4,500.00, the costs in the aforesaid seven cases to be taxed by the clerk. . . . It is further considered that said recovery is in full settlement and satisfaction of all matters involved in the seven cases aforementioned, and on payment of said sum of $4,500.00 and interest from 17 April, 1893, until paid, and costs of said actions as herein directed, all the assets of the late firm of Jordan parker are to vest in and become the property of said William Jordan and A. I. Parker, but nothing herein shall regulate, or in any way, affect the rights of said William Jordan, A. I. Parker and Martha W. Parker as among themselves. *Page 428 
The defendants contend that under this judgment the title to the entire property was to be vested in William Jordan and A. I. Parker, and that, as Martha W. Parker was a party to this proceeding, her interest in the land as tenant in common, was divested. It must be observed that no deed has ever been made for this land, and that the purchase money of $18,000.00 has never been paid. The only portion of the purchase money that has been paid was the $4,500.00 paid to Vann as administrator of J. J. Jordan.
Section 1904 of The Code of 1883, which was in force at the time of the agreement of 4 August, 1884, provides as follows: "Whenever it appears by satisfactory proof that an actual partition of the lands cannot be made without injury to some or all of the parties interested, the court shall order a sale of the property described in the petition, or any part thereof, on such terms as to size of lots, place or manner of sale, time of credit and security for payment of purchase money, as may be most advantageous to the parties concerned, and, on the coming in of the report of sale and confirmation thereof, and payment of the purchase money, the title shall be made to the purchaser or purchasers at such time and by such person as the court may direct, and in all cases where the persons in possession have been made parties to the proceeding, the Court may grant an order for possession."
Section 1921 of The Code of 1883 provides as follows: "Upon confirmation of the report, the Court shall secure to each tenant in common his ratable share in severalty of the proceeds of sale; and the deed of the officer or person appointed to sell, when such deed is directed to be made, shall convey to the purchaser such title and estate in the property as the tenants in common had."
These sections are brought forward in C. S., 3241. Therefore, in order to divest the title of a tenant in common, confirmation and payment of purchase money was necessary. Taylor v. Carrow, 156 N.C. 6.
In Taylor v. Carrow, 156 N.C. 6, it is held: "On the other hand, even when there has been a decree of confirmation, title will not be executed until the purchase money has been paid." Burgin v. Burgin, 82 N.C. 197; While, ex parte, 82 N.C. 378.
But it is contended by the defendants that when the sale was confirmed by the judgment of the clerk on 13 November, 1891, that William Jordan, A. I. Parker and Martha W. Parker became equitable owners and acquired an equity to demand a deed for the premises upon the payment of the purchase money. Upchurch v. Upchurch, 173 N.C. 91; Farmer v. Daniel, 82 N.C. 152;Joyner v. Futrell, 136 N.C. 301. Therefore, if a deed had been made to William Jordan and A. I. Parker and Martha W. Parker, that A. I. Parker and Martha W. Parker, being husband and wife, would take an estate by entirety, and, hence, upon *Page 429 
the death of Martha W. Parker in 1914, the entire property would vest in her husband, A. I. Parker. Davis v. Bass, 188 N.C. 200; Hampton v.Wheeler, 99 N.C. 222.
This contention, however, cannot be maintained for the reason that if the wife alone be entitled to a conveyance, and the conveyance is made to her and her husband jointly, the husband will not be entitled to retain the whole by survivorship. The principle is thus expressed in Sprinkle v.Spainhour, 149 N.C. 223: "Hence, if the wife alone be entitled to a conveyance, and it is made to her and her husband jointly, the latter will not be allowed to retain the whole by survivorship. And it matters not if the conveyance is so made at her request, because being a married woman she is presumed to have acted under the coercion of her husband. It is one of the essentials of the peculiar estate by entireties sometimes enjoyed by husband and wife, that the spouses be jointly entitled as well as jointly named in the deed." Harrington v. Rawls, 136 N.C. 65; Carson v. Carson,122 N.C. 645; Garris v. Tripp, ante, 211.
There is, in addition, another principle of law which prevents the divesting of the title of Martha W. Parker. The contract of the parties of 4 August, 1884, is a contract between husband and wife, and the title of the wife could not be transferred to the husband without observing the formalities required by C. S., 2515. As the interest of Martha W. Parker in the land was a part of her separate estate, her title thereto could only be divested by contract executed in accordance with the statute. "In the absence of such a contract a trust would result in the wife's favor, even if the deed operated to create the estate which it purports to convey."Speas v. Woodhouse, 162 N.C. 66; Deese v. Deese, 176 N.C. 527.
The defendants take the further position that the contract of 1884 and the compromise judgment of 1893 by Judge John Gray Bynum, constitute color of title, and that they have been in possession of the property, collecting the rents and profits, since the death of Martha W. Parker in 1914. This suit was instituted 7 March, 1925, and hence the defendants claim that they have been in possession of the land under colorable title for more than seven years. Color of title, says Hoke J., in Smith v. Proctor,139 N.C. 314, "is a paper-writing (usually a deed) which professes and appears to pass the title but fails to do so." Tate v. Southard, 10 N.C. 314
119; Burns v. Stewart, 162 N.C. 360; Seals v. Seals, 165 N.C. 409.
We do not think that the contract of 1884, the confirmation of sale based thereon, and the compromise judgment of 189; 3 constitute color of title as against Martha W. Parker for the following reasons.
(1) The contract of 1884 stipulated a fixed value of $18,000.00 for the whole property. It neither contemplated nor required the payment *Page 430 
of this total sum, but only required the payment of that portion of the purchase price accruing to J. J. Jordan. In other words, a fair interpretation of this agreement leads to the conclusion that the parties were simply contracting to purchase the interest of J. J. Jordan in the property.
(2) The report of the sale by the commissioner recites that "the property described in the complaints sold for the sum of $18,000.00 in the way in which the sale is heretofore explained. Purchasers are part of the parties plaintiff and have not paid the purchase price of said property. They are to pay six per cent interest from 4 August, 1884, and to pay J. J. Jordan the amount that may be due him by 1 January, 1885." This report confirms the conclusion that the parties were proceeding upon the theory that they were purchasing only the share of J. J. Jordan in the property.
(3) The compromise judgment of Judge Bynum merely consolidated all the cases and compromised controversies existing between the parties with reference to the partnership assets, personal property and others matters set out in the record. This compromise judgment adjudged "that John E. Vann as surviving administrator of J. J. Jordan, deceased, recover of said William Jordan and A. I. Parker the sum of $4,500.00 and the costs in the aforesaid seven cases to be taxed by the clerk, . . . and on payment of said sum of $4,500.00 and interest from 17 April, 1893, until paid, and the costs of said actions as herein directed, all the assets of the late firm of Jordan Parker are to vest in and be the property of said William Jordan and A. I. Parker." Certainly, the separate real estate of Martha W. Parker, who was not a member of the partnership of Jordan Parker, could not be transferred in this manner as assets of the partnership. William Jordan and A. I. Parker were to pay $4,500.00. This was the exact amount of the value of the interest of J. J. Jordan in the property, as determined by the parties, in the contract 1884. Therefore, this judgment merely confirms the fact that when all the proceedings are considered as a whole that the parties were merely purchasing the interest of J. J. Jordan, and in the compromise judgment this interest was to become the property to A. I. Parker and William Jordan. A. I. Parker and William Jordan, as the record discloses, paid Vann, administrator of J. J. Jordan, the sum of $4,500.00.
It is true, as contended by the defendants, that under certain conditions partition proceedings constitute color or little. In support of this contention the defendants cite McCulloh v. Daniel, 102 N.C. 529;Canter v. Chilton, 175 N.C. 406; Lumber Co. v. Cedar Works, 165 N.C. 83. In the McCulloh case the defendant claimed under a deed made in certain judicial proceedings to sell the land of testator *Page 431 
to make assets. In Canter v. Chilton, supra, there was a deed made by the commissioner under order of court in a proceeding for decreeing a sale for partition.
In the case of Lumber Co. v. Cedar works, supra, Justice Walker says: "It has been held that where less than the whole number of tenants join in a proceeding to sell the common estate for partition, and the same is sold, a deed made under order of the court to the purchaser is color of title, and seven year's adverse possession thereafter by him under the deed will bar the cotenants who were not parties."
There are other cases to the same effect. The theory upon which all these cases are based is that the proceedings to constitute color of title must actually undertake to pass title to the purchaser.
For the reasons given we do not think this principle is applicable to the facts of this case.
We conclude, therefore, upon the record that the interest of Martha W. Parker in said land was not vested in her husband, A. L. Parker, by said proceedings.
There is a controversy as to whether the deed for the Old Town farm was made A. L. Parker's wife or to A. I parker and wife. If this deed was made to A. I Parker and wife, the interest of Martha W. Parker in this property would vest in her husband by survivorship. This is a question of fact for a jury.
It also appears from the record that in 1922 a suit was brought in which all the heirs at law of the parties were joined, to ascertain the rights of the parties in said lands. In that suit the jury found that the plaintiffs, Etta Jordan Crocker and Bernard Crocker, owned no interest in said land, and there was judgment accordingly. But the record further shows that summons in that action was never served upon the plaintiff, Etta Jordan Crocker, or her husband, and therefore said judgment was nullity as to her.Condry v. Cheshire, 88 N.C. 375; Card v. Finch, 142 N.C. 144; Clark v.Homes, 189 N.C. 703.
Reversed.