J. C. CARTER AND WIFE, ROSE CARTER, v. J. W. OXENDINE.

(Filed 6 April, 1927.)

1. **Husband and Wife—Estates—Entireties—Gift—Parol Trusts—Trusts —Deeds and Conveyances.**

Where a husband pays for lands and has a deed therefor made to the wife, the law presumes that he has made a gift to her of the lands so conveyed.

2. **Same—Statutes—Separate Examination of Wife—Probate.**

Our Constitution and statute require of a conveyance of lands by the wife, for her protection, that her written consent and privy examination be taken, and a parol trust in lands purchased with her own money, or partly so purchased, cannot be engrafted on a deed, made subsequently, at her request by the seller to her and her husband, or create an estate by entireties so that the estate surviving to the husband will descend to his heirs at law.

CIVIL ACTION, before *Midyette, J.,* at December Term, 1926, of ROBESON.

The evidence tended to show that prior to 1915 Joseph W. Oxendine and Ruth E. Oxendine, his wife, owned about 66 35/100 acres of land; 25 1/4 acres of this land was the property of Joseph W. Oxendine, the husband, through inheritance from his ancestors. The wife, Ruth E. Oxendine, was the owner of 41 1/10 acres of said land, the purchase money for which had been paid from the joint earnings of the family and deed made to her.

The plaintiff, John Carter, is the son of Ruth E. Oxendine, and was born before her marriage to the defendant. The defendant had one son, Joseph W. Oxendine, Jr., by his first wife. Defendant and his wife, Ruth, had no children born of their marriage.

John Carter and his wife and Ruth E. Oxendine and her husband, Joseph Oxendine, lived together as one family, and being desirous of acquiring a tract of land upon an improved highway, they sold the 66-acre tract and purchased with the proceeds thereof 115 acres of land lying on both sides of the hard-surface road running to Pembroke. The sale of the land and the purchase of the tract on an improved highway was negotiated by C. M. Barker. The sale and purchase constituted one transaction, and all papers bore the same date. Barker testified that Ruth Oxendine said to him that "she and the defendant were getting old, and said they had worked hard, and that she wanted these deeds made so it would protect or give her and the defendant a home. Said if they could get the deeds made where they would be protected with a home, or guarantee them a home, or something to that effect, that she would make the deed for her land and take this over." I said, "Ruth, I will tell you what I will do. We will make the deed to the right-hand

side of the road to you and Carter's wife," and I says, "You and Carter's wife will not have to sign the mortgage upon the land on the left-hand side of the road." She said, "Jodie (meaning the defendant) and myself have worked hard and gotten old. I want to have the deeds made in a way by which it would give us a home." . . . "She was an intelligent woman, and the reason that was done was to protect a home, as she said, for both of them. She went further then and said John and wife (plaintiffs) had worked hard, not only for her and the defendant, but for themselves. I told her the wives would not have to sign the mortgage. Mortgage was given on the lands on the opposite side of the road, which had been conveyed to the men." In accordance with this conversation, deed for 53 1/2 acres of land was made to Ruth Oxendine and Rosaline or Rose Carter jointly for all the land on the right-hand side of the improved highway, and a deed to the land on the left-hand side of the highway was executed to the defendant, Joseph W. Oxendine, and the plaintiff, John Carter. The defendant, Joseph W. Oxendine, and the plaintiff, John Carter, executed a mortgage for $1,500 for the balance of the purchase price on the tract so conveyed to them. This mortgage has been paid. Ruth Oxendine died intestate about the year 1925. The plaintiff, John Carter, claims a one-half interest in the 53 1/2-acre tract on the right-hand side of the road as heir at law of his mother, Ruth Oxendine. The defendant, the husband of Ruth Oxendine, deceased, claims the half-interest in said land by reason of what he alleges was a parol trust impressed upon said land by Ruth Oxendine at the time the deed was made to her and Rosaline Carter.

At the conclusion of the evidence, the trial judge sustained a motion to dismiss the defendant's cause of action as upon nonsuit, and signed judgment decreeing that the plaintiffs are the legal owners and entitled to the possession of the half interest of Ruth Oxendine in and to said tract of land, from which judgment the defendant appealed.

*Varser, Lawrence, Proctor & McIntyre for plaintiffs.*
*T. A. McNeill and Johnson, Johnson & McLeod for defendant.*

BROGDEN, J. Can a married woman create a parol trust in her land in favor of her husband?

The defendant alleged as a defense to the action instituted by the plaintiffs that the communication between Ruth E. Oxendine and Barker constituted a trust in favor of defendant. The allegation of the answer asserting this defense is as follows: "That at and prior to the time the land set forth and described in paragraph one of the complaint were purchased, a parol agreement was entered into between the defendant, Joseph W. Oxendine, and his wife, Ruth E. Oxendine, to the effect that

the lands described in the complaint would be purchased and held as a home for the said parties, the same not to be mortgaged or encumbered, but to belong to the said Joseph W. Oxendine and wife, Ruth E. Oxendine, and owned by them as a permanent home. . . . That by virtue of said understanding and agreement the said property became and was the property of Joseph W. Oxendine and wife, Ruth E. Oxendine, and that it amounted to tenancy by the entirety, and that upon the death of said Ruth E. Oxendine, the said property, by virtue of the understanding and agreement between the parties, vested absolutely in the defendant, Joseph W. Oxendine, and that *by virtue of said parol trust agreement* the said Joseph W. Oxendine is now the owner of said property in fee simple."

The defendants, in their brief, assert that: "It is not contended by the defendant in this case that there is any resulting trust in his favor." So that the naked question presented is whether the wife, in the light of the evidence, created a parol trust in said land in favor of her husband, or that she held her half interest in said land as a tenant by the entirety. There is no allegation of mistake of the parties or of the draftsman of said deed, and no correction or reformation thereof is sought in this action.

It is thoroughly established by law in this State that if a husband conveys land to his wife, or procures the title to be made to her by another, that the law presumes it is a gift to the wife. *Singleton v. Cherry,* 168 N. C., 402; *Nelson v. Nelson,* 176 N. C., 191; *Tire Co. v. Lester,* 190 N. C., 416.

· The facts, in their final analysis, present a situation in which the wife, with her own money, seeks to purchase land, and, while the deed is made to her, she undertakes to impress upon the title a parol trust in favor of her husband in the event he should survive her. The rule relating to the creation of a parol trust by a married woman in favor of her husband is thus expressed in Mordecai's Law Lectures, vol. 2, p. 1067: "A *feme covert* cannot create a parol trust in land, for to permit such a thing would be a subterfuge to evade the Constitution and statutes made for her protection. However, this rule may apply to her own property only, and not to property in which she has no beneficial interest. To create a trust in land is, in effect, the conveyance of an interest therein; and in order to convey an interest in her land the written consent of the husband, as required by the Constitution and statute, and her private examination as required by the statutes, are essential." *Farthing v. Shields,* 106 N. C., 289; *Thurber v. LaRoque,* 105 N. C., 301; *Ricks v. Wilson,* 154 N. C., 287.

The defendants rely upon the cases of *Ray v. Long,* 132 N. C., 891, and *Murchison v. Fogleman,* 165 N. C., 397. In both of these cases the title was taken in the name of the husband, although the purchase money

in both instances was paid jointly by the husband and the wife. Under these circumstances the Court held that the wife could enforce her equity against her husband, but, as we interpret the decisions, they do not sustain the position that the husband could enforce a like equity against the wife under the circumstances as disclosed by the facts. As the money which Ruth E. Oxendine paid for the land belonged to her, even though the deed had been made to her and her husband, at her request, constituting an estate by entirety, still the husband could not retain the land by survivorship for the reason that "if the wife alone be entitled to a conveyance, and it is made to her and her husband jointly, the latter will not be allowed to retain the whole by survivorship. And it matters not if the conveyance is so made at her request, because being a married woman, she is presumed to have acted under the coercion of her husband." *Clark, C. J.,* in *Deese v. Deese,* 176 N. C., 527; *Sprinkle v. Spainhour,* 149 N. C., 223; *Speas v. Woodhouse,* 162 N. C., 69; *Crocker v. Vann,* 192 N. C., 422; *Garris v. Tripp,* 192 N. C., 211.

We are therefore of the opinion, under all the facts disclosed in the record, that the judgment was correct and should be upheld.

Affirmed.